**PECORARO et ux. v. KOPANICA et al.**

**No. 16570.**

Court of Appeal of Louisiana. Orleans.

March 22, 1937.

Legier, McEnerny & Waguespack, of New Orleans, for appellants.

St. Clair Adams & Son, of New Orleans, for appellee Peter Kopanica.

JANVIER, Judge.

This is a suit for damages. Mrs. Joseph Pecoraro alleges that she sustained injuries to her nervous system when a brick wall, alleged to have been jointly owned as a party wall by defendants, fell and crashed into the side of the building in which Mrs. Pecoraro was at the time, performing her household duties. Mr. Pecoraro seeks recovery for the damages sustained by household effects and for the amount of the physician's bill and the cost of the medicines which were necessary in the treatment of Mrs. Pecoraro's nervous condition.

Plaintiffs at the time occupied the premises No. 1120 Dumaine street. Next to their residence is a vacant lot owned by Anthony Valenti and next to Valenti's lot is a building owned by Peter Kopanica. Between the Kopanica building and the Valenti lot was the wall which collapsed. Mrs. Pecoraro, who was in her home at the time, admits that she was not struck by any portion of the wall when it fell, but she alleges that she was frightened "to such an extent that she became hysterical and sustained a severe nervous shock." She claims $235.47. Mr. Pecoraro claims $23.95 for damage to household effects, and he also alleges that he was required to pay for medical attention and medicines for his wife the sum of $40.50, for which he also seeks recovery.

In the court below there was judgment for Mrs. Pecoraro against both defendants in the sum of $10 and in favor of Mr. Pecoraro and against both defendants in the sum of $18.59. Plaintiffs appealed, contending that the amounts awarded are inadequate. Kopanica has answered both appeals, seeking a reversal of the judgments and a dismissal of the suit, but Valenti has neither answered the appeals of plaintiffs nor himself appealed.

Kopanica now concedes that for such damage as was actually sustained defendants are liable, but he maintains that Mrs. Pecoraro sustained no injury and is seeking to take advantage of the occasion to obtain money to which she is not entitled, and that Mr. Pecoraro has exaggerated the damage which may have actually been sustained by his house furnishings and that the physician has made an exorbitant charge for his services.

█ Valenti, having failed to appeal or answer the appeals, is no longer before

us, and therefore the judgments rendered against him cannot be reversed or reduced. See Alengi et al. v. Hartford Accident & Indemnity Company et al., 183 La. 847, 165 So. 8; Goldberg v. Banta Bros. et al., 183 La. 10, 162 So. 786.

The principal issue is presented in the claim of Mrs. Pecoraro, who, though she received no ·external nor internal physical injuries, maintains that, as a result of fear, her nerves were shattered and she was severely injured in this regard.

■ There are divergent views in various jurisdictions concerning the right to recover damage for fright or nervous shock unaccompanied by physical injury evidenced by objective symptoms, and in many courts it is held that the opportunity for fraudulent exaggeration in such situations is so great that it is best to permit no recovery, unless the nervous condition can be shown to result from actual physical injuries of which there is objective evidence. In Louisiana, however, it is settled that, even though there may be no actual objective symptoms of injury, there may be recovery for nervous shock if the evidence concerning such nervous condition is sufficient to warrant the belief that such injury was actually sustained. We found such a case in Klein v. Medical Bldg. Realty Co., 147 So. 122, as did the Court of Appeal for the Second Circuit, in Laird v. Natchitoches Oil Mill, Inc., 10 La.App. 191, 120 So. 692, 693, in which it said: "There is a conflict of opinion in other jurisdictions as to whether or not there can be a recovery for fright or the physical consequences resulting therefrom, where there is not any contemporaneous physical injury; however, under article 2315 of the Civil Code, which declares that every act whatever of man that causes damages to another obliges him by whose fault it happened to repair it, it is at least recognized that the physical consequences resulting from fright may be properly considered in estimating damages, although the fright was unaccompanied by a contemporaneous physical injury."

In Stewart v. Arkansas Southern Railway Company, 112 La. 764, 36 So. 676, 677, the Supreme Court of Louisiana discussed the question of whether fright should be considered as an element of damage and said:

"The argument that fright, as an element of damages, is not to be considered, has interesting features.

"It would perhaps be convenient and expeditious, in determining suits such as this, to adopt the simple rule that no recovery of any kind can be had for fright occasioned by the negligence of another, be the fright what it may, although its consequences are most serious—such as blindness, insanity and even miscarriage. * * *

"Under our jurisprudence and special laws, we would not be justified if we were to adopt this simple rule. In our Code (articles 2315–2317) the wise precept of the Institutes of Justinian are incorporated in substance, to wit: 'Juris præcepta sunt, alterum non lædere, suum cuique tribuere,' and, as translated and inserted in our Code, its text looks to the liability for all damages."

In the Stewart Case, in addition to the fright, there were physical injuries evidenced by objective symptoms, but what the court said concerning fright was evidently not influenced by the fact that the fright was accompanied by physical injury.

An examination of the evidence touching upon the effect upon Mrs. Pecoraro of the noise made by the falling wall leads to the conclusion that she did not sustain any appreciable injury even to her nervous system. She was not in any of the rooms which were in any way damaged by bricks from the wall and, when she heard the crash—and here we rely upon her own statement—she "thought it was the tank at the laundry," which laundry was situated on St. Ann street, a considerable distance away. She states that she thought it was an explosion at the laundry because (referring to the laundry) "now and then it makes a terrible noise." We do not overlook the fact that she sought to overcome the effect of the above-quoted testimony by stating that only once before had the laundry made a noise and that then it was not an alarming noise similar to that made by the falling wall. But the obvious effect on her was to make her believe that it was only another explosion at the laundry and, as she was familiar with that noise and with the fact that with it there had never before been associated danger, we do not see how it can be said that her nerves were shattered,

because it was not until a few moments later that she discovered that it was not the laundry at all, and, when she made that discovery, the noise had terminated and there was nothing to cause her fear of any kind. In other words, from the testimony given by Mrs. Pecoraro herself, we conclude that at no time was she actually in fear of impending physical injury.

We realize that the physician has testified to injury to her nervous system and has said that it was necessary for him to treat her for many weeks, but, obviously, the trial judge was not impressed, because, although the physician made a charge of $36, the amount allowed in the judgment for medical fees was only $10.

 We also note that Mrs. Pecoraro had been suffering for a year or more prior to the falling of the wall with a nervous condition for which she required treatment, and, though we realize that, if her nerves were already shattered, there still should be an allowance for an aggravation of that condition, we think that the evidence fails to show more than that, after the occurrence, Mrs. Pecoraro continued to suffer from a condition which had previously existed.

The judgment in her favor was incorrect and must be reversed in so far as it runs against Peter Kopanica.

The evidence of damage sustained by the household effects seems to us to justify the amount awarded to Mr. Pecoraro, but does not warrant an increase.

The claim by Mr. Pecoraro for medical services and medicines, however, because of the view we take concerning the claim of Mrs. Pecoraro, must be rejected in toto.

It is therefore ordered, adjudged, and decreed that the judgment appealed from, in so far as it runs against Peter Kopanica and in favor of Mrs. Joseph Pecoraro, be and it is annulled, avoided, and reversed, and it is now ordered that there be judgment in favor of Peter Kopanica and against Mrs. Pecoraro dismissing her suit as against that defendant.

It is further ordered, adjudged, and decreed that the judgment appealed from, in so far as it runs against Peter Kopanica and in favor of Joseph Pecoraro, be and it is amended by the reduction thereof to the sum of $5.00.

It is further ordered, adjudged, and decreed that in all other respects the judg-ment appealed from be and it is affirmed. Defendants to pay costs in the First City Court and plaintiffs to pay costs of appeal.

Reversed in part; amended and affirmed in part.