572 So.2d 571 (1990)
Sonya R. CLOMON
v.
MONROE CITY SCHOOL BOARD.
No. 90-C-0915.
Supreme Court of Louisiana.
December 3, 1990.
Dissenting Opinion December 14, 1990.
Opinion January 4, 1991.
Additional January 11, 1991.
Rehearing Denied January 30, 1991.
*572 Thomas G. Zentner, Jr., Theus, Grisham, Davis & Leigh, Monroe, for Monroe City School Bd. defendant-applicant.
Milton Dale Peacock, Monroe, for Sonya R. Clomon plaintiff-respondent.
Dissenting Opinion by Justice Cole December 14, 1990.
Additional Reasons in Support of Majority Opinion January 4, 1991.
Additional Reasons in Dissent January 11, 1991.
DENNIS, Justice.
This is a suit by a young woman against a school board for damages because of the severe emotional distress she sustained, without contemporaneous physical injury, when her automobile struck and killed a four year old school boy who darted into her path after the school board's bus driver and bus attendant discharged the boy from the bus, prematurely deactivated the bus warning devices and drove away, leaving the boy alone to cross the street to his home. The trial court held the school board liable for the emotional distress and subsequent physical and mental illnesses its employees negligently inflicted on the young woman but reduced her recovery by 30% because of her negligent failure to see the boy before he ran into the street. The court of appeal affirmed, Clomon v. Monroe City School Board, 557 So.2d 1100 (La.App. 2d Cir.1990), and this court granted certiorari to determine whether the decisions below were consistent with the bystander recovery rule announced in Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990).
The deceased, Antonio Benjamin, was a four year old handicapped special education student who lived on Powell Avenue in Monroe. During the 1983 fall school term the Monroe City School Board provided him with school transportation in a mini-bus designated for handicapped children. Each school day Antonio was transported to and from his house under the care and supervision of the school bus operator and a special education attendant.
We see no error in the trial court's findings of fact based on conflicting testimony of witnesses to the accident: On the afternoon of the accident, the bus driver halted the bus opposite Antonio's house on Powell Avenue and engaged the bus warning lights and retractable stop signs. Powell Avenue at that point was a three lane thoroughfare, and the bus was stopped partially occupying the two lanes farthest from Antonio's house. The attendant exited the bus with Antonio, escorted him around the front of the bus, left him standing by the driver's side of the bus in the center lane, and reboarded the bus. The bus driver, who assumed that the attendant had seen Antonio safely across the street, disengaged the warning devices and started to drive away. Sonya Clomon, an eighteen year old college student, who was driving her parents' automobile, saw the school bus with its warning lights activated as she approached Powell Avenue on a side street about one quarter mile away. But when Sonya turned onto Powell Avenue and drove toward the bus at a lawful speed of 35 MPH, the bus warning lights and stop signs had been disengaged, and the bus began to pull away from its stop. Sonya did not see Antonio standing in the center lane by the driver's side of the bus. As her vehicle passed the front of the bus, she saw Antonio attempting to cross the street. Sonya braked and veered the car but it struck Antonio just before he reached the other side of the avenue. Antonio died later that day from injuries sustained in the accident.
Nor do we detect any misuse of discretion in the trial judge's assessment of Sonya's damages:
Plaintiff claims that, as a result of the accident, she has suffered severe emotional trauma which aggravated her diabetic condition and caused a post-traumatic stress disorder. Following the accident, she was admitted to the Glenwood Hospital for diabetic reaction triggered by the accident, and in the summer of 1984, she spent about twenty-one (21) days in Woodland Hills, undergoing treatment and therapy by her psychiatrist, Dr. Gene Moore.
The Court believes that the plaintiff's complaints about the emotional trauma *573 she suffered are real and genuine. Only a callous or stoic person would not be affected by this accident. Although time is a great healer of the mind, the trauma suffered by the plaintiff will long remain with her. The Court further believes that a considerable amount of her trauma was eliminated when the negligent homicide charge was reduced to a misdemeanor. [Sonya was charged with negligent homicide, arrested, booked and later released on bail on the night after the accident. Ultimately, she was permitted to plead nolo contendre to a charge of negligent operation and pay a fine of $150 for this offense on January 19, 1987.] For this type of injury, the Court finds $25,000 to be a fair award.
The trial court concluded that the bus driver, the attendant and Sonya were each guilty of negligent acts and omissions contributing to the accident. The court attributed 70% of the negligence to the school board employees, reduced Sonya's recovery by 30% to correspond with her portion of the fault, and entered judgment in her favor against the school board in the amount of $17,500. The Court of Appeal affirmed the judgment, finding no error of fact and concluding that the trial court's decision was consistent with the court of appeal's previous decision holding that Sonya's cause of action was valid. Clomon v. Monroe City School Board, 557 So.2d 1100 (La.App. 2d Cir.1990).
In its previous decision, the court of appeal reversed a trial court ruling by which the lower court had sustained the school board's exception of no cause of action. Clomon v. Monroe City School Board, 490 So.2d 691 (La.App. 2d Cir.1986). The court of appeal held that under the facts alleged in the petition, which were substantially the same as the plaintiff later proved at trial, a cause of action had been stated for negligently inflicted emotional distress damages, because the school board employees had violated a "direct and separate [statutory] duty owed by the board to the motorist to operate the warning signals on the school bus until the child departing the bus reaches a place of safety, which duty is correlative to the duty owed by the motorist to obey these signals." Id. at 694. See La.R.S. 32:80. Further, the court of appeal held that the school board's policy imposing similar requirements on the bus driver and a separate obligation on the attendant to escort the child to a place of safety created a legal duty that "extends to protect not only the departing handicapped child, but, as well, the motorist who might strike the departing child if a breach of the duty of one or more employees of the board causes wholly or partly an accident between the motorist and the child, even though the motorist herself might be partially at fault in causing the accident." Id.
Sonya's application for certiorari by this court was denied. Clomon v. Monroe City School Board, 563 So.2d 886 (La.1990). We granted the school board's application, Clomon v. Monroe City School Board, 563 So.2d 869 (La.1990), to decide whether a plaintiff in Sonya's position should be barred from recovering damages for her negligently inflicted emotional distress for any or all of the following reasons: she was not closely related to the deceased victim of the accident; she sustained only emotional distress damage without immediate physical injuries in the collision; and she was contributorily negligent in causing the accident. These are the only issues presented because the school board's application and argument here are restricted to them.

1. Whether the Bystander Recovery Rule Applies
Civil Code Article 2315, in pertinent part, provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. * * *" The fundamental civil law principle stated by this article has been a basic tenet of our law since 1808. See Art. 2315, La.C. C.Comp.Ed., in 17 West's LSA-C.C. p. 16 (1972). Although it is true that some exceptions have been made to the general principle that a person is liable for all damage caused by his fault, it is clear that in the absence of a statutory provision declaring an exception, or a compelling need for one to preserve the public interest, no such *574 exception should be recognized by the courts.
One exception created by this court to the principle of complete reparation was the rule that a plaintiff may not recover for his emotional distress caused by a defendant's negligent infliction of injury upon a third personeven if the third person was the plaintiff's child or other loved one. Black v. Carrollton R.R. Co., 10 La.Ann. 33 (1855). See, also, Kaufman v. Clark, 141 La. 316, 75 So. 65 (1917); Brinkman v. St. Landry Cotton Oil Co., 118 La. 835, 43 So. 458 (1907); Sperier v. Ott, 116 La. 1087, 41 So. 323 (1906). Although it is debatable whether this court ever advanced any compelling policy for the exception or its broad, amorphous nature, the rule proved quite durable and was not overruled until earlier this year by our decision in Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990). In the Lejeune case this court held that a wife had a cause of action under Civil Code Article 2315 for her negligently inflicted emotional distress which she sustained upon entering her comatose husband's hospital room and discovering that he had been bitten by rats just prior to her arrival. Acknowledging the formidable problems that judges and juries face in distinguishing fraudulent and idiosyncratic claims from meritorious ones, this court deemed it necessary to impose admittedly "somewhat arbitrary", Lejeune v. Rayne Branch Hospital, 556 So.2d 559, 569 (La.1990), restrictions on such claims in order to establish a "guaranty of merit against fraud" and other abuses. See 3 Harper, James and Gray, The Law of Torts 685 (2d ed. 1986); H. Smith, Relation of Emotions to Injury and Disease: Legal Liability for Psychic Stimuli, 30 Va.L.Rev. 193, 207 (1944). Thus, within the facts of the Lejeune case, this court concluded that mental pain and anguish claims arising out of injury to third persons are allowable, with these modifications and restrictions:
1. A claimant ... must, however, either view the accident or injury-causing event or come upon the accident scene soon thereafter and before substantial change has occurred in the victim's condition.
2. The direct victim of the traumatic injury must suffer such harm that it can reasonably be expected that one in the plaintiff's position would suffer serious mental anguish from the experience.
3. The emotional distress sustained must be both serious and reasonably foreseeable to allow recovery.
4. A fourth restriction concerns the relationship of the claimant and the direct victim. ... Regarding this fourth requirement,... we leave for another day a decision whether recovery should be allowed only for close relatives (and, if so which ones), or rather, for those with simply a close relationship to the victim.
Lejeune v. Rayne Branch Hospital, 556 So.2d 559, 570-71 (La.1990).
These restrictions or indicia of merit were modeled on those developed by courts in California and other states in Dillon v. Legg, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968) and its progeny. See, e.g., Thing v. Lachusa, 48 Cal.3d 644, 257 Cal. Rptr. 865, 771 P.2d 814 (1989); Champion v. Gray, 478 So.2d 17 (Fla.1985); Apache Ready Mix Co., Inc. v. Creed, 653 S.W.2d 79 (Tx.App.1983); Versland v. Carson Transport, 206 Mont. 313, 671 P.2d 583 (1983); Cohen v. McDonnel Douglas Corp., 389 Mass. 327, 450 N.E.2d 581 (1983); Sinn v. Burd, 486 Pa. 146, 404 A.2d 672 (1979); Gustafson v. Faris, 67 Mich.App. 363, 241 N.W.2d 208 (1976). Limitations of this type may be referred to very generally as "bystander recovery rules" because they are designed to permit recovery when a plaintiff closely related to the direct victim of an accident actually witnesses the injury as a bystander or comes upon the scene immediately afterward. For critical analyses of the bystander recovery development, see Pearson, Liability to Bystanders for Negligently Inflicted Emotional HarmA Comment on the Nature of Arbitrary Rules, 34 U.Fla.L.Rev. 477 (1982); Comment, Dillon Revisited: Toward a Better Paradigm for Bystander Cases, 43 Ohio S.L.J. 931, 948 (1982); Note, Limiting Liability for the Negligent Infliction of Emotional Distress: The "Bystander Recovery" Cases, 54 S.Cal.L.Rev. 847 (1981); Dillon v. Legg Revisited: Toward a *575 Unified Theory of Compensating Bystanders and Relatives for Intangible Injuries, 35 Hastings L.J. 477 (1984).
Prior to the advent of the bystander recovery rule the common law courts had resorted to other "somewhat arbitrary" limits to claims for negligently inflicted emotional distress. The two main restrictions were the "impact" and "zone of danger" rules. The latter is still adhered to by many courts which have thus far rejected the bystander recovery rule. Prosser & Keeton, The Law of Torts § 54, p. 366 (5th ed. 1984). See, e.g., Tobin v. Grossman, 24 N.Y.2d 609, 301 N.Y.S.2d 554, 249 N.E.2d 419 (1969); Rickey v. Chicago Transit Authority, 101 Ill.App.3d 439, 57 Ill.Dec. 46, 428 N.E.2d 596 (1981); Shelton v. Russell Pipe & Foundry Co., 570 S.W.2d 861 (Tenn.1978). Under the "impact" rule, the plaintiff in order to recover for negligently inflicted emotional distress without immediate physical injury was required to prove that the tortfeasor's conduct caused some "impact" upon the person of the plaintiff. Prosser & Keeton, The Law of Torts § 54, p. 363 (5th ed. 1984). See, e.g., Cadillac Motor Car Division v. Brown, 428 So.2d 301 (Fla.App. 1983); Deutsch v. Shein, 597 S.W.2d 141 (Ky.1980); Howard v. Bloodworth, 137 Ga. App. 478, 224 S.E.2d 122 (1976). The English and many American courts later adopted the "zone of danger" approach under which a plaintiff may recover for her emotional distress at the injury to her child if the plaintiff herself is threatened with physical injury by the defendant's negligence. Prosser & Keeton, The Law of Torts § 54 p. 365 (5th ed. 1984). See, e.g., Hambrook v. Stokes Brothers, 1 K.B. 141 (1925); Stadler v. Cross, 295 N.W.2d 552 (Minn.1980); Keck v. Jackson, 122 Ariz. 114, 593 P.2d 668 (1979); Vaillancourt v. Medical Center Hospital, 139 Vt. 138, 425 A.2d 92 (1980). Apparently, some courts believed, at least for a time, that satisfaction of the impact or zone of danger rule provided some necessary assurance or guaranty that the courts would not become besieged by claims that were feigned or born out of hypersensitivity.
In the present case, the defendant school board argues that Sonya's emotional distress does not qualify her for recovery under the Lejeune administrative strictures. The defendant forthrightly concedes that in all likelihood Sonya's proof satisfied three of the four bystander recovery restrictions, viz., that she was a percipient witness to the accident and the direct victim's injury; that the direct victim's injury reasonably could be expected to cause another to suffer serious mental anguish; and that the witness' emotional distress was serious. But the school board contends that Sonya's case fails to satisfy the fourth bystander recovery requisite, i.e., that the claimant had a close relationship with the direct victim.
We agree that Sonya cannot succeed under Lejeune's bystander recovery rule because she did not have a close relationship with the direct victim as required by the rule.. However, Lejeune does not govern every class of claim for emotional damage due to third party injury. Lejeune addressed only the most typical class, a suit by a plaintiff emotionally distressed by his loved one's injury against a tortfeasor based purely on a breach of the latter's general duty of due care. In formulating rules to establish a guaranty of merit for this broad class of claims, the Lejeune court did not intend to modify or interrupt the development of rules or decisions permitting recovery for emotional distress from a tortfeasor who owed the plaintiff a special, direct duty created by law, contract or special relationship. In fact, the court noted with evident approval a number of court of appeal decisions recognizing such an "independent duty owed to an aggrieved non-traumatically injured plaintiff." Lejeune v. Rayne Branch Hospital, 556 So.2d at 567; citing Bishop v. Callais, 533 So.2d 121 (La.App. 4th Cir.1988), writ denied, 536 So.2d 1214 (La.1989) (Parents stated a cause of action for mental anguish damages because of injuries inflicted upon their minor child while confined in a psychiatric hospital, and that the hospital may owe a duty to the parents.); Skorlich v. East Jefferson Gen. Hosp., 478 So.2d 916 (La.App. 5th Cir.1985) (Physician owed a *576 duty to father and mother not to negligently injure the child during the birth process. Presumably, the court found that the father would suffer mental anguish from any possible injury to the child.); Holland v. St. Paul Mercury Ins. Co., 135 So.2d 145 (La.App. 1st Cir.1961) (Exterminating company owed an independent contractual duty to the parents, separate from the duty owed to their son who allegedly ingested rat poison.); Jordan v. Fidelity & Casualty Co., 90 So.2d 531 (La.App. 2d Cir.1956) (Negligent driver's breach of duty resulted in liability to other driver for mental distress arising out of concern over possible injury to unborn child where that driver's pregnant wife was riding in car at time of collision.); Champagne v. Hearty, 76 So.2d 453 (La.App.Orl.1955) (Landlord's duty to maintain property in a safe condition resulted in liability to pregnant tenant for mental anguish caused by fear that fetus was injured when ceiling plaster fell onto tenant.); Valence v. Louisiana Power & Light Co., 50 So.2d 847 (La.App.Orl.1951) (Bus driver's negligence in running into ditch made carrier liable to pregnant passenger and her husband for the mental anguish they suffered as a result of feared injury to fetus.). Moreover, this court in Lejeune expressly relied on its prior decision in Pitre v. Opelousas Gen. Hosp., 530 So.2d 1151 (La 1988) as presaging the overruling of Black v. Carrollton R.R. Co., 10 La.Ann. 33 (1855), and as "[r]ecognizing the physician's duty to the parents to act reasonably so as to avoid acts or omissions which might foreseeably lead to the birth of a child (in a case where the doctor had undertaken a procedure to sterilize the mother) [and holding that] the parents had stated a cause of action for their emotional and mental distress associated with the birth of their `unplanned and unwanted' child, since these were foreseeable consequences of the alleged negligence." Lejeune v. Rayne Branch Hospital, 556 So.2d at 568.
Finally, Lejeune clearly recognized in expounding the fundamental principle of Civil Code Article 2315 that this basic precept favors the full reparation of wrongfully injured persons, Lejeune v. Rayne Branch Hospital, 556 So.2d at 568; that in formulating each delictual duty the social, moral and economic factors and other policy considerations pertinent under the particular circumstances must be weighed, Id.; and that "[m]oving from a jurisprudential situation where no claims have been allowed for mental pain and anguish relative to injury to third parties, to one in which some but not all claims will be allowed, of necessity requires some line drawing at the outset." Id. at 569.
Consequently, we conclude that this court is not precedentially bound to apply mechanistically the damage limitation rules of Lejeune to the present case. Instead, this case calls on us to employ familiar methodology in examining a statutory standard of conduct to decide whether it prescribes a direct, special duty to the plaintiff to compensate her for negligently inflicted emotional distress. Further, the delictual duty here involves a narrower category of potential claims with respect to which we must weigh a different mixture of empirical factors to determine whether the principle of full reparation should be applied without stint or cabined by prophylactic limitations.

2. Whether the Statute Prescribes a Duty to Repair Emotional Distress Damages
To determine whether Sonya established that the school board employees owed her a special, direct duty that they breached, entitling her to recover emotional distress damages caused by the violations, we follow a method similar to that of determining whether a defendant may be held liable in a negligence case on the basis of his violation of a statute. The bases for delictual liability relied upon by Sonya are the fault of the defendant's special education attendant in failing to escort or to see Antonio safely across the street and the fault of the defendant's bus driver in failing to comply with the statute governing the receiving and discharging of children from school buses. In this review we focus on the fault of the bus driver because it stems from the breach of a statutory duty which clearly was owed to a motorist *577 in Sonya's position. It is not necessary to analyze the attendant's duty to determine whether it encompassed a special, direct duty owed to the motorist. Under La.R.S. 32:80 the bus driver has a direct, non-delegable duty to protect the child and the motorist in this situation. The bus driver cannot rely on the attendant in the performance of his legal duties to protect children and motorists. The actions and omissions of the bus driver alone justify the assessment of 70% of the negligence in this case to the school board.
The statute governing receiving and discharging children from school buses, La. R.S. 32:80, provides that a school bus driver must activate the bus's alternately flashing signal lights whenever he stops or is about to stop on the highway for the purpose of receiving or discharging children. La.R.S. 32:80(B)(1) and (2). The driver of a vehicle on a highway approaching a school bus that has stopped to receive or discharge school children must stop his vehicle not less than thirty feet from the school bus when its signal lights are flashing and not proceed until its signals are off or the bus resumes its trip. La.R.S. 32:80(A)(1). Any motorist convicted of violating this law shall be subject to a fine or imprisonment, or both. La.R.S. 32:80(A)(4). A school bus driver is authorized to notify law officials of a violation of this law, and a citation may be issued on the basis of such notice to the owner or lessee of a vehicle involved in a violation. La.R.S. 32:80(A)(3).
The process by which a child crosses an open highway to board or disembark from a school bus is charged with danger. Accordingly, the legislature has enacted the most stringent provisions feasible to safeguard the entire operation. The child, the bus driver and the motorist are constituents of this process, bound together legally and practically in a special, exigent relationship, from the moment the bus stops and signals until the child is safely across the roadway. See Westerfield v. LaFleur, 493 So.2d 600, 605 (1986). If the school bus driver and the motorist perform their duties properly, a child who crosses a typical roadway while leaving or entering an immobile signalized school bus is guarded from harm by a legal cordon during the entire time he is traversing the roadway. He and his parents are entitled to rely for his safe passage upon the motorist's observance of the safety zone and the bus driver's performance of his duty to activate highly visible signals, await the child's safe passage and report any motorist's violation of the legally protected passageway. The injury or death of a child during the protected receiving or discharge procedure can result in severe consequences for even an innocent motorist including criminal prosecution, civil damage suits, and moral opprobrium. Id.
It is clear that the bus driver in the present case violated her duties to await the safe passage of the child and to refrain from prematurely deactivating the signals or resuming her trip. It is equally apparent that the busperson's breach of the statutory duty caused the damage. Sonya is entitled to the presumption that she would have heeded a proper warning, and there is nothing in the record to indicate that she would have failed to do so. Bloxom v. Bloxom, 512 So.2d 839, 850 (La. 1987); Vickers v. Chiles Drilling Co., 882 F.2d 158 (5th Cir.1989). In determining whether the bus driver's violation was a breach of a delictual duty owed specially and directly to Sonya it is necessary to examine the purposes of the legislation and decide (1) whether Sonya falls within the class of persons it was intended to protect and (2) whether the harm complained of was of the kind which the statute was intended, in general, to prevent. See Carter v. City Parish Government of East Baton Rouge, 423 So.2d 1080 (La.1982); Boyer v. Johnson, 360 So.2d 1164 (La. 1978); Prosser & Keeton, supra § 36 at 225.
Having examined the provisions of the statute, we conclude that by vesting the bus driver with authority similar to that of a policeman to direct the motorist's use of the highway under pain of criminal penalty the legislature has also imposed upon the bus driver the duty to perform his role properly for the benefit of the motorist. *578 Consequently, the motorist is required and entitled to rely for his safety, convenience and peace of mind upon the bus driver's performance of his duty to activate highly visible signals, await the child's safe passage and remain as a stationary sentinel until the child's security is clearly assured. It is obvious that the bus driver's dereliction may result in minimal to extreme consequences for the motorist including his fright at a near miss, his own physical injury or property damage, or his serious emotional and mental illness associated with a child's injury or death, as in the present case. Moreover, it is evident that the bus driver's duty is owed not only to the careful motorist but also to the inattentive driver who may have relied on the busman's signals or lack thereof. Although the bus driver's duty is not imposed to protect the utterly indifferent or foolhardy, its protection is not restricted to those whose senses are precisely attuned to the prospect of the particular danger encountered. The evidence does not indicate that Sonya would have been oblivious to the flashing signals had they been activated or to the motionlessness of the bus had it remained stationary. On the contrary, there is every reason to believe that if such warnings had been given, Antonio's tragic death would have been avoided as well as Sonya's emotional distress and illness. See Levi v. SLEMCO, 542 So.2d 1081, 1089 (La.1989); Malone, Cause In Fact, 9 Stanford L.Rev. (1956).
By the same token, we believe that the harm that befell Sonya was within the class of harms that the statute was intended to guard against. Cf. Carter v. City Parish Government of East Baton Rouge, 423 So.2d 1080 (La.1983). The accident resulted from exactly the kind of risk which the statute was designed to prevent. Cf. Boyer v. Johnson, 360 So.2d 1164 (La.1978); Smolinski v. Taulli, 276 So.2d 286 (La. 1973). Sonya's damage was included within the same general risk, or class of risk, at which the statute is directed. In the absence or any other guide in the legislation itself, a statute may well be assumed to include all risks that reasonably may be anticipated as likely to follow from its violation. Prosser & Keeton, supra § 36 at 226-27 n. 65, 66. It is reasonable to expect that a motorist who unexpectedly encounters a small child in the roadway after a school bus has extinguished its warning lights and has departed may become involved in various types of accidents. It is also predictable that some of these mishaps will foreseeably lead to either physical or emotional trauma, or both, for the motorist involved. For all of these reasons, and because the motorist is placed in a position of reliance by the law and the acts or omissions of the school bus driver, it would not be just to deny the motorist recovery for any damage attributable to the bus driver's negligence.
Moreover, in this type of case the plaintiff-motorist usually will be a percipient witness to the injury, and her claim of serious emotional distress can be considered in light of the objective circumstances of the accident and injury absent the complicating factor of any personal relationship with the direct victim. Consequently, we conclude that in the narrow class of cases involving the direct, special statutory duty owed to the motorist, there is no justification for the creation of juristic limitations upon the principle of reparation underlying Civil Code Article 2315. Accordingly, Sonya should be permitted to recover for her severe emotional distress and other consequent injuries that were found to be genuine by each lower court and conceded to be proven by the defendant.

3. Whether Recovery is Barred by Sonya's Contributory Negligence
Civil Code Article 2323 (1980) provides: "When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss." In view of the clear *579 mandate of Civil Code Article 2323 (1980), there is no basis in law for barring rather than reducing Sonya's recovery. Under the circumstances of this case, barring Sonya's recovery would be tantamount either to resurrecting the legislatively abrogated doctrine of contributory negligence or to concluding that the bus driver owed Sonya no duty, a proposition which we must reject for the reasons advanced above.

DECREE
The judgments of the trial court and the court of appeal in favor of plaintiff Sonya Clomon and against the defendant the Monroe City School Board are affirmed at relator's cost.
AFFIRMED.
WATSON, J., concurs and assigns reasons.
HALL, J., joins in the opinion and adds concurring reasons.
MARCUS, J., dissents and assigns reasons.
COLE, J., dissents and assigns reasons.
WATSON, Justice, concurring.
I concur in the result reached by the majority in the extremely well written and well supported opinion.
However, in my view this is not a "bystander recovery" case and I therefore believe that much of the comparison with Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990), where I dissented, is not necessary. Here the plaintiff was not a bystander; she was physically involved in the accident. For this reason, I would hold that she is entitled to recover for her emotional damages just as she would be if she had suffered physical damages or a combination of the two. Some might regard the distinction I see as a quibble, but awarding damages to a person actually involved in an accident, no matter what the nature of the damages, is a much more precise and concrete application of Civil Code article 2315 than formulating and applying the necessarily arbitrary guidelines necessitated by the allowance of "bystander recovery."
Therefore, I respectfully concur in the result.
HALL, Justice (concurring).
I subscribe to the majority opinion and add these concurring reasons.
The majority opinion quite properly distinguishes this case from Lejeune. Lejeune is a bystander case in which the plaintiff sought to recover emotional damages suffered as a result of witnessing injuries to a third person caused by the defendant's breach of duty owed to the third person. Here, plaintiff was not a bystander. As a result of the defendant's breach of duty owed to her, she became a participant in the accident. Plaintiff does not seek to recover as a result of witnessing an injury to another; she seeks to recover because she was involved in a traumatic accident as a result of the defendant's negligence. Her emotional distress suffered during an accident in which she was involved and which was caused by defendant's negligence is compensable. Since she was a participant in the accident she is entitled to recover because of her concern for her own well-being, not merely because of her concern for a third party as a witness to the accident. While she probably suffered no fear for her physical well-being, she likely suffered great fear of the consequences of having hit a child and severe guilt and remorse. This emotional distress, conceded by all to be serious and disabling, was caused by the negligence of the defendant, and therefore plaintiff is entitled to recover for it.
MARCUS, Justice (dissenting).
I dissent from the recognition of a duty owed to a person who has suffered mental anguish but has not sustained physical injury. In any event, I do not believe that the bus driver breached a duty to plaintiff under the circumstances of this case. Accordingly, I respectfully dissent.
*580 COLE, Justice, dissenting.
I respectfully dissent. The issue addressed by this Court in Lejeune v. Rayne Branch Hosp., 556 So.2d 559 (La.1990), was whether a defendant owes a duty to protect a plaintiff from mental anguish occasioned by the negligent infliction of injury to a third person. We there held such a duty exists under limited circumstances and specifically delineated those circumstances. Because plaintiff in this case did not bear a close relationship with the victim of the accident, I would reverse the Court of Appeal and dismiss plaintiff's claim.
The substantive issue presented in this case is whether plaintiff may recover for mental anguish occasioned by the physical injury and subsequent death of Antonio Benjamin, who was in no way related to plaintiff. This issue is much the same as the issue presented in Lejeune and I fail to see why the majority declines to address the issue within the parameters set forth in Lejeune. In declining to apply Lejeune, the majority relies on two premises. First, the majority asserts it is not "precedentially bound to apply mechanistically the damage limitation rules of Lejeune" because that case dealt only with the breach of a general duty of care, not the breach of a "special, direct duty created by law...." Second, the majority declares that La.R.S. 32:80, a statute which is directed toward the protection of children, contains a "special, direct duty" which is owed to all motorists, and which encompasses the mental anguish suffered by plaintiff. For the following reasons, I believe each premise is erroneous.

I.
First of all, I believe the majority's statement that Lejeune was not meant to govern every class of claim for emotional distress resulting from injury to a third person is dubious. When the Court of Appeal addressed the Lejeune case, it defined the issue as follows: "[d]oes Louisiana now recognize a cause of action for mental distress experienced by a claimant resulting from injury sustained by a third person?" Lejeune v. Rayne Branch Hosp., 539 So.2d 849, 850 (La.App. 3rd Cir.1989). We granted writs in that case, 541 So.2d 861 (La. 1990), to review the jurisprudence that had developed since Black v. Carrollton Railroad, 10 La.Ann. 33 (1855), and to determine "just what limits should be established on the availability of a cause of action for mental pain and anguish damages because of physical injury to a third party." 556 So.2d at 569. Prior to delineating the limits on the cause of action, we specifically recognized that we wanted to avoid having the law in this area developed in an ad hoc manner by the lower courts. We stated:
Just as many other states have done, we find need to move restrictively in this area. It is for this reason that we are not inclined to rely simply on general principles of duty and negligence. Administrative boundaries or guidelines imposed jurisprudentially at the outset will facilitate application by the lower courts, ensure that there is no open-ended exposure of tortfeasors, and ensure as well that a policy of limited exposure to serious mental pain and anguish damages sustained by a limited class of claimants will be permitted.
* * * * * *
Accordingly, we will determine in this case what guidelines should control the allowance of recovery, focusing on whether the plaintiff must observe the injury causing event, the type of injury suffered by the victim, the severity of the plaintiff's mental pain and anguish, and the character of the relationship between the victim and the plaintiff.
556 So.2d at 569. By holding that the carefully drawn guidelines of Lejeune are not applicable in any case in which a court can find a "special, direct" duty owed to the plaintiff, the majority has done precisely what the majority in Lejeune deemed it unwise to do: it has recognized an enormous class of cases[1] in which the lower courts may award damages for emotional *581 distress caused by third party injury on an ad hoc basis.
To support its statement that Lejeune was not intended to apply to the facts of this case, the majority cites numerous cases mentioned by the Court in Lejeune with "evident approval." According to the majority, these cases recognize recovery of emotional distress damages arising from injury to a third party when there is an independent duty owed to an aggrieved, non-traumatically injured plaintiff. However, I believe these cases were cited in Lejeune merely as a review of the development of the "maverick cases" which had refused to apply the rule of Black v. Carrollton Railroad, supra. I do not believe the citation was intended to carve out a subcategory of cases which would not be subject to the rules that were later enunciated in Lejeune. To the contrary, the cases cited fit squarely within the parameters we developed in Lejeune. I think it is quite pertinent to note that every one of these "maverick" cases involves a plaintiff who bore a close relationship with the person who was directly injured by the defendant. Bishop v. Callais, 533 So.2d 121 (La.App. 4th Cir.1988), (parent-child relationship); Skorlich v. East Jefferson Gen. Hosp., 478 So.2d 916 (La.App. 5th Cir.1985), (parent-child relationship); Holland v. St. Paul Mercury Ins. Co., 135 So.2d 145 (La. App. 1st Cir.1961), (parent-child relationship); Jordan v. Fidelity & Casualty Co., 90 So.2d 531 (La.App. 2nd Cir.1956), (parent-unborn child relationship); Champagne v. Hearty, 76 So.2d 453 (La.App.Orl.1955), (mother-unborn child relationship); Valence v. Louisiana Power & Light Co., 50 So.2d 847 (La.App.Orl.1951), (parent-unborn child relationship). It does not seem to me that prior cases which allowed recovery for mental anguish for injury to a closely related person may be cited to justify the non-application of the close relationship requirement of Lejeune.

II.
The second premise used by the majority to support its argument that Lejeune is inapplicable is likewise disturbing. The majority contends La.R.S. 32:80 creates a "special, direct duty" owed to all motorists. However, I believe R.S. 32:80 is plainly directed toward the protection of children who ride school buses, and not toward the protection of motorists.
When a rule of law upon which a plaintiff relies for imposing a duty is based upon a statute, this Court must interpret the legislative intent as to the risk contemplated by the legal duty created in the statute to determine whether the statute actually creates a duty which is owed to the plaintiff. Hill v. Lundin, 260 La. 542, 256 So.2d 620 (1972). Seldom does a statute protect every person against every risk that may befall him merely because it is shown that the violation of the statute played a part in producing the injury. 256 So.2d at 623. Applying this principle to the facts of this case leads me to conclude that R.S. 32:80 does not create a duty which is owed to plaintiff. Rather, R.S. 32:80 is designed to protect children who ride school buses. It sets forth various procedures which a bus driver must follow when he stops to pick up or unload children. Although the statute authorizes (indeed requires) the bus driver to use the electronic stop signs and flashing lights to stop traffic, this authority is given so as to protect the children who must cross a street when entering or exiting the bus. There is absolutely nothing in the language of the statute, its legislative history, or the jurisprudence interpreting it suggesting it creates any duty directly owed to oncoming motorists, much less a "special, direct duty."
Additionally, R.S. 32:80 is but one of a myriad of traffic regulations contained in the Louisiana Highway Regulatory Act, La.R.S. 32:1-32:399. Most of the regulations contained in the Act are directed toward the protection of a particular class of persons.[2] Despite the fact that the vast *582 majority of the Highway Regulation Act statutes are directed toward narrow classes of persons, each could be interpreted broadly, as the majority has done to R.S. 32:80, to be directed to all motorists. Are we then to conclude each of these statutes creates a "special, direct" duty to motorists such that emotional distress damages caused by third party injury are available? If so, are not our courts now at the mercy of creative attorneys who have at their disposal literally hundreds of regulatory statutes[3] through which they may forage to find "special, direct" duties? If not, what guidelines are the lower courts to use to determine when a regulatory statute creates a "special, direct" duty?
A few examples may help illustrate the potential problems created by the majority's ruling. R.S. 32:193-32:197 provide various rules by which bicycle riders must abide. Suppose a cyclist, who is under 18 years of age, is killed when an automobile strikes him. Suppose further that the cyclist was riding his bike on the wrong side of the road and did not have proper reflectors on his bike, in violation of the statutes. The automobile driver is found to have been 50% at fault for failing to keep a proper lookout, and the cyclist is found to have been 50% at fault for operating the bicycle in violation of the statutes. May the automobile driver recover from the cyclist's grieving parents for mental anguish caused by the cyclist's negligence? Similarly, in the above example, suppose the cyclist was riding a motorcycle without a helmet, in violation of R.S. 32:190. Suppose further he was killed in an accident with a motorist, who was 95% at fault. If the motorist can prove that the motorcyclist would not have died but for his failure to wear a helmet, and that he suffered grave mental anguish for having killed the motorcyclist, may the motorist recover for his mental anguish? Suppose under the facts of the instant case, plaintiff was found to have been under the influence of alcohol at the time of the accident and was apportioned 80% at fault, may she still recover for her mental anguish? Lastly, if the testimony in today's case had indicated plaintiff suffered mental anguish both because of her having killed the child and because she witnessed his physical injuries at the scene of the accident, would plaintiff be limited to recovering only for that distress associated with the grief caused by having killed the child? If the answer to this last question is no, we have created a situation in which a person who suffers serious mental anguish by witnessing a gruesome and traumatic injury to a stranger may not recover for his mental anguish[4] while the person whose fault was a substantial cause of the accident may recover. If the answer is yes, we have placed upon triers of fact a very difficult, perhaps impossible, burden: the burden of distinguishing between, and placing values upon, different types of mental anguish.
I am certain that what has been done by the majority significantly undercuts the primary objective of Lejeune, which was to impose practical guidelines for the lower courts which will "ensure that there is no open-ended exposure of tortfeasors, and ensure as well that a policy of limited exposure to serious mental pain and anguish damages sustained by a limited class of claimants will be permitted." (emphasis added). I recognize there is a distinction in the way plaintiff characterized her mental anguish in this case and the characterization of the plaintiff's mental anguish in Lejeune. (See, Hall, J., concurring, supra). Nevertheless, I believe the damages claimed in each case are of sufficient similarity to render the prudential considerations involved in Lejeune applicable to this case. The contrary view adopted by the majority in this case is at odds with Lejeune and I sincerely believe opens the floodgates of litigation. While I respect the views of my brethren in the majority, I suggest this Court should stem the tide. I *583 would reverse the Court of Appeal and dismiss plaintiff's claim.
DENNIS, Justice, assigning additional reasons in support of the majority opinion.
Torts scholars should recognize the longer of the two dissenting opinions as an extremely narrow interpretation of prior decisions by this court and the courts of appeal. Other readers, however, may be misled by the dissenting opinion's use of partial quotations and arguments that do not take into account the total environment and historical development of the law of damages. Accordingly, I think a brief reply should be made in order to aid in placing the dissenting opinion's legal analyses in perspective.
In the dissent's view, liability for negligently inflicted emotional distress must be confined exclusively to cases falling within the recently developed bystander recovery rule. But other judges and scholars have recognized that "liability for negligently inflicted psychic harm has typically (but not invariably) arisen in two contexts, which sometimes overlap to form a third." Harper, James & Gray, The Law of Torts, Vol. 3 § 18.4, p. 688-89 (1986) (Footnotes omitted). First, is the case in which plaintiff narrowly escapes physical injury, the threat of which causes serious alarm and consequent psychic or physical injury or both. Harper, James & Gray, supra at 689; Restatement (Second) of Torts § 436(1) & (2) (1965); Comment, Negligent Infliction of Emotional Distress: Reconciling the Bystander and Direct Victim Causes of Action, 18 U.S.F.L.Rev. 145, 161 (1983); Minzer, Nates, Kimball, Axelrod & Goldstien, Damages in Tort Actions, Vol. 1, §§ 5.10-5.14 (1990). The second typical case has to do with shock to bystanders, e.g., the mother (for instance) who witnesses her child being killed or injured by the negligent defendant. Harper, James, and Gray, supra at p. 689; Restatement (Second) of Torts § 436(3) (1965); Comment, Dillon Revisited: Toward a Better Paradigm for Bystander Cases, 43 Ohio St.L.J. 931 (1982). Comment, Limiting Liability for the Negligent Infliction of Emotional Distress: The "Bystander Recovery" Cases, 54 U.S.C.L. Rev. 847 (1981); Minzer, Nates, Kimball, Axelrod & Goldstien, Damages in Tort Actions, Vol. 1, §§ 5.20-5.25 (1990). These two categories may overlap, where the person who is not hit physically, but is shocked to witness the injury or death of a companion, could have been hit physically. See Harper, James and Gray, supra at p. 690 and authorities cited therein.
Also, a number of smaller special categories have been recognized, as exceptions to the three typical cases, in which recovery for emotional disturbance has been allowed. A number of courts, including this court, have allowed recovery against a telegraph company for the negligent transmission of a message, especially one announcing death, indicating on its face a potential for mental distress. See, e.g., Graham v. Western Union Telegraph Co., 109 La. 1069, 34 So. 91 (1903); Russ v. Western Union Telegraph Co., 222 N.C. 504, 23 S.E.2d 681 (1943); Western Union Telegraph Co. v. Redding, 100 Fla. 495, 129 So. 743 (1930). Courts in this state and others have allowed similar recovery for the mishandling of corpses. See, e.g., Fortuna v. St. Bernard Memorial Gardens, 529 So.2d 883 (La.App. 4th Cir.1988); Shelmire v. Linton, 343 So.2d 301 (La.App. 1st Cir.1977); French v. Ochsner Clinic, 200 So.2d 371 (La.App. 4th Cir.1967); Blanchard v. Brawley, 75 So.2d 891 (La.App. 1st Cir.1954); Clark v. Smith, 494 S.W.2d 192 (Tex.Civ.App.1973); Allen v. Jones, 104 Cal.App.3d 207, 163 Cal.Rptr. 445 (1980); Torres v. State, 34 Misc.2d 488, 228 N.Y. S.2d 1005 (1962). There have been other exceptional cases, but all of them have in common the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious. See Prosser & Keeton, The Law of Torts § 54, p. 362 (5th ed. 1984) and authorities cited at n. 32; See, also, Harper, James and Gray, The Law of Torts § 18.4 at n. 19.
Indeed, the evolving view is toward the recognition of a duty imposed on the defendant to refrain from the negligent infliction of serious emotional distress in special circumstances *584 where the mental anguish is the clearly foreseeable result or when a special relationship exists between the defendant and the plaintiff. According to some authorities, some of the best known, but by no means the only, examples involve wrongdoing on the part of common carriers, the tele-communications industry and persons involved in the handling of dead bodies. Minzer, Nates, Kimball, Axelrod and Goldstien, Damages in Tort Actions, Vol. 1 § 5.12 (1990). See, also, Gray v. Superior Court, 181 Cal.App.3d 813, 226 Cal.Rptr. 570 (1986); Molien v. Kaiser Foundations Hospitals, 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (1980); Berman v. Allen, 80 N.J. 421, 404 A.2d 8 (1979); Vattimo v. Lower Bucks Hospital, Inc., 59 Pa.Cmwlth. 1, 428 A.2d 765 (1981); Naccash v. Burger, 223 Va. 406, 290 S.E.2d 825 (1982); Johnson v. State, 37 N.Y.2d 378, 372 N.Y.S.2d 638, 334 N.E.2d 590 (1975); Rodrigues v. State, 52 Hawaii 156, 472 P.2d 509 (1970). c.f. Restatement (Second) of Torts § 314(A) (1965).
In Louisiana jurisprudence, the state and federal courts of appeal have developed, as an exception to the "no duty" rule of Black v. Carrollton R.R. Co., 10 La.Ann. 33 (1855), a well established rationale that a plaintiff may recover for his mental anguish resulting from another's injuries when the anguish is in fact caused by the breach of a primary and independent legal or contractual duty which is owed directly to the aggrieved plaintiff. L.P. v. Oubre, 547 So.2d 1320 (La.App. 5th Cir.1989) writ denied, 550 So.2d 634 (La.1989); Bishop v. Callais, 533 So.2d 121 (La.App. 4th Cir. 1988) writ denied, 536 So.2d 1214 (La.1989); Mesa v. Burke, 506 So.2d 121 (La.App. 5th Cir.1987) writ denied, 506 So.2d 1226 (La. 1987); Skorlich v. East Jefferson Gen. Hosp., 478 So.2d 916 (La.App. 5th Cir.1985); Rodriguez v. Traylor, 461 So.2d 413 (La. App. 4th Cir.1984) rev'd on other grounds, 468 So.2d 1186 (La.1985); Blackwell v. Oser, 436 So.2d 1293 (La.App. 4th Cir.1983) writ denied, 442 So.2d 453 (La.1983); Spencer v. Terebelo, 373 So.2d 200 (La. App. 4th Cir.1979) writ denied, 376 So.2d 960 (La.1979); Holland v. St. Paul Mercury Ins. Co., 135 So.2d 145 (La.App. 1st Cir.1961); Jordan v. Fidelity & Casualty Co., 90 So.2d 531 (La.App. 2d Cir.1956); Champagne v. Hearty, 76 So.2d 453 (La. App.Orl.Cir.1955); Valence v. Louisiana Power & Light Co., 50 So.2d 847 (La.App. Orl.Cir.1951); LeConte v. Pan American World Airways, Inc., 736 F.2d 1019 (5th Cir.1984); Turgeau v. Pan American World Airways, 764 F.2d 1084 (5th Cir. 1985). In Lejeune this court recognized and approved this line of cases as being based on a rationale independent of the one under which a plaintiff seeks to recover solely because of his anguish over the injury to a third person, viz., the rationale of the bystander type case. Lejeune v. Rayne Branch Hospital, 556 So.2d 559, 567 (La.1990) ("[I]n a few exceptional Louisiana cases the courts of appeal have been able to ferret out an independent duty owed to an aggrieved non-traumatically injured plaintiff."). The Lejeune court did not attempt to subsume this line of cases under the bystander recovery rule. Indeed, many of the independent duty cases simply will not fit within the bystander recovery rule. For example, the parents in Bishop v. Callais, supra, and L.P. v. Oubre, supra, were not percipient witnesses to the molestation of their children which caused the mental distress for which they received an award of damages. Likewise, the husband in Valence v. L.P. & L, supra, recieved damages for mental distress caused by fear of injury to his unborn child despite the fact that he was not present when the bus carrying his pregnant wife ran off the road and into a ditch. More important, none of the courts in those cases relied on a bystander rule, but instead found that the defendant breached an independent, direct duty owed to the plaintiff.
Furthermore, the Lejeune court did not indicate any intention to overrule or modify the sizeable body of state and federal court of appeal decisions under which plaintiffs, who suffer no physical harm contemporaneous with the actionable act or omission, may recover for mental anguish resulting from fear or fright over the plaintiff's own well being or from the damage to the plaintiff's property in view. See, e.g., Hymel v. *585 Tom Alexander Brokerage Co., 348 So.2d 104 (La.App. 4th Cir.1977) writ denied sub nom. Jacob v. Tom Alexander Brokerage Co., 350 So.2d 894 (La.1977); Rezza v. Cziffer, 186 So.2d 174 (La.App. 4th Cir.1966); Speight v. Southern Farm Bureau Ins. Co., 254 So.2d 485 (La.App. 3rd Cir.1971); Hoffman v. All Star Ins. Co., 288 So.2d 388 (La.App. 4th Cir.1974) writ denied, 290 So.2d 909 (La.1974); Butler v. Pardue, 415 So.2d 249 (La.App. 2d Cir.1982); Chappetta v. Bowman Transportation, Inc., 415 So.2d 1019 (La.App. 4th Cir.1982); Dawson v. James H. Stuart & Deaton, Inc., 437 So.2d 974 (La.App. 4th Cir.1983); Farr v. Johnson, 308 So.2d 884 (La.App. 2d Cir. 1975); Meshell v. Ins. Co. of North America, 416 So.2d 1383 (La.App. 3rd Cir.1982); Carroll v. State Farm Ins. Co., 427 So.2d 24 (La.App. 3rd Cir.1983); Stewart v. Arkansas Southern R. Co., 112 La. 764, 36 So. 676 (1904); Lewis v. Holmes, 109 La. 1030, 34 So. 66 (1903); Laird v. Natchitoches Oil Mill, 10 La.App. 191, 120 So. 692 (La.App. 2d Cir.1929); Klien v. Medical Bldg. Realty Co., 147 So. 122 (La.App.Orl. Cir.1933); Pecoraro v. Kopanica, 173 So. 203 (La.App.Orl.Cir.1937); Clegg v. Hardware Mut. Cas. Co., 264 F.2d 152 (5th Cir.1959); Sahuc v. United States Fidelity & Guaranty Co., 320 F.2d 18 (5th Cir. 1963); Bode v. Pan American World Airways, Inc., 786 F.2d 669 (5th Cir.1986); Mayo v. Borden Inc., 784 F.2d 671 (5th Cir.1986).
For all of these reasons, it is evident that the bystander recovery rule was not intended by the Lejeune court, or any other court that has adopted such a rule, to supersede all other categories and situations in which plaintiffs are permitted to recover for negligently inflicted emotional distress.
The dissenting opinion also adopts an extremely narrow approach to determining whether a statute prescribes a standard of conduct required of a reasonable person. In the dissent's view, the statute prescribes no standard for a bus operator's conduct affecting a motorist because the purpose of the statute is to protect children, not motorists. Although this may be the principal object of the statute, the dissenting opinion does not explain why the statute fails to prescribe a standard of conduct for a reasonable bus operator in this situation, even though the law clearly ordains how the operator is required to signal to the motorist whether it is safe or unsafe to pass the school bus. This type of approach, as Prosser & Keeton have observed:
"is an exceedingly narrow and quite unreasonable interpretation, as in the Missouri case where a requirement that emery wheels be hooded was held to be intneded to guard only against the dust hazard, and not to prevent injuries to workmen's eyes. This sort of highly restrictive interpretation has become quite unfashionable in recent years. A much more reasonable attitude is that of the New York court in a decision holding that an act requiring elevator shafts to be guarded covered the risk of objects falling down the shaft, to the effect that the accident need only be included within the same general risk, or class of risks, at which the statute is directed. Thus, in the absence of any other guide, a statute may well be assumed to include all risks that reasonably may be anticipated as likely to follow from its violation." Prosser and Keeton, The Law of Torts, § 36 at p. 227.
The dissent's exceedingly narrow interpretation is anomalous because it seems clear that safety statutes, such as speed laws and traffic rules, usually are designed for the broad purpose of preventing accidents or dangerous situations, for the benefit of all those who foreseeably may be injured. See Prosser and Keeton, The Law of Torts, § 36 at p. 232. Furthermore, the dissent's highly restrictive view that the statute protects only the child would lead to absurd and unjust results. If the schoolboy had darted from behind the bus and the motorist had been free of fault in veering into a ditch or telephone pole to avoid the child, the motorist could not have recovered from the bus operator or the school board even for her physical injuries under the dissent's reading of the statute. On the other hand, if the motorist had arrived earlier while the bus was immobile and signalized, had failed to heed the signals, and had crashed into *586 the bus in an attempt to avoid the child, the school board could not recover from the motorist under the dissent's view of the statute for the damage to its school bus.
In the daylight of objective analysis, the dissent's parade of hypothetically horrible cases turns out to be just a bogeyman of its writer's imagination. Although it is not proper to predict how this court will interpret other statutes in cases not before it, clearly most other legislative schemes do not include the pertinent elements of the statute at issue here: (a) The bus operator's obligation to communicate a dual warning and command to a distinct, identifiable class of motorists; (b) A criminal penalty to be imposed for a motorist's failure to rely upon and obey the warning-command; (c) The consequent reliance of particular motorists upon the bus driver to properly direct their movements so as to avoid opprobrious accidents involving school children. Most statutes, such as those instanced by the dissent, create only obligations to the public or to motorists in general; they do not create special relationships based on quasi-official warnings and commands which citizens are required to obey, and upon which they are assured that they may rely to protect them from the repercussions of accidentally killing or maiming innocent school children. As for the difficulty the dissent foresees in distinguishing between a statute which prescribes such a direct, special obligation and one that does not, this chore is no more onerous than the challenge which judges face every day in determining whether a standard of conduct required of a reasonable person may be prescribed by legislative enactment. See, e.g., Carter v. City Parish Government of East Baton Rouge, 423 So.2d 1080 (La.1983); Boyer v. Johnson, 360 So.2d 1164 (La.1978); Smolinski v. Taulli, 276 So.2d 286 (La.1973); Prosser and Keeton, The Law of Torts § 36 at p. 225. It is one of the things that judges get paid to do.
Finally, and most basic, the dissent's legal analysis is topsy-turvy in that it totally disregards this court's legally established duty to provide full reparation for wrongful damage while it elevates to first importance this court's ancillary, and purely jurisprudential, function of imposing prophylactic limitations on the measure of damages in some cases. Consequently, the dissent fails to recognize that when such limitations are called for they must be formulated cautiously and commensurately with both the codal principle of full reparation and the magnitude of the abuse sought to protected against. As we indicated in the majority opinion, the underlying delictual principle of full reparation of fault-caused damage justifiably may be limited by the courts only when clearly called for by the public interest. Moreover, it is self evident that in imposing limits on reparation, even where warranted, courts may not act arbitrarily and should employ the means least restrictive to recovery that are necessary to protect the endangered public interest. In the Lejeune case this court concluded that certain prophylactic limitations were necessary to protect the litigants, the courts and the administration of justice from feigned and idiosyncratic claims. But in that case the court dealt with a potentially broad class of claimants including bystanders and accident-aftermath arrivers who had experienced no direct threat of loss or harm in the accident itself and who were owed no special, independent or direct duty by the tortfeasor. It would be arbitrary to assume that the same rules formulated in Lejeune for application to uninvolved spectators should be mechanically stretched to cover all types of emotional distress claims. As I think we have demonstrated in the majority opinion, the fact that the defendant's bus driver violated a direct, special statutory duty to the plaintiff and thereby caused her to become an actual participant in an accident in special circumstances where mental anguish was clearly foreseeable provides adequate assurance against bogus or idiosyncratic claims. To superimpose the bystander recovery rule on this very different type of situation would unnecessarily restrict and undermine the principle of full reparation which this court is required to follow by the legislated law.
*587 COLE, Justice, assigning additional reasons in dissent.
I respectfully supplement the dissent I previously filed in this case to clarify and focus upon what I consider to be the dominant issue. That issue is whether the plaintiff may recover for her emotional distress arising from the death of someone who does not bear a close relationship with her; and, the effect of the plaintiff's own causative fault on the question.
It is my considered judgment and firm belief that recovery for emotional distress arising from the death or injury to a stranger, and brought about partly by the plaintiff's own negligent conduct, should not be allowed. It is one thing to recognize a cause of action for emotional distress when the plaintiff bears a close relationship with the victim and plays no part in bringing about the condition; it is entirely another thing to allow recovery under the facts of this case.
This court overruled one hundred and thirty-five years of jurisprudence when it handed down Lejeune. It was done so with qualifications thoughtfully imposed. One of those qualifications was that the plaintiff must bear a close relationship with the victim of the accident. Here, the victim was a four-year-old child the plaintiff struck and killed. The child was a total stranger to the plaintiff. Admittedly, this case differs from Lejeune in that the plaintiff was physically involved in the accident and was not a mere bystander. However, in my view we should not use a duty intended primarily to protect against a certain risk and convert it into a vehicle for reaching the crucial policy determination which confronts the court in this case. Of course, there is support from some legal theorists for the position taken by the majority. There is also support against that position.
Aside from the legal theorists, a member of this court, other than this writer, dissents from the majority view on the basis there should be no recognition of a duty owed to this plaintiff; and, further, that under the circumstances of this case no duty was breached by the defendant. A member of the appellate panel that decided the case also dissented from the majority result, stating that Lejeune clarifies and explains the jurisprudence relative to damages for mental anguish arising from the death or injury to someone else. In his view, "What was once unclear is now certain: even if she proves causation, duty and breach, a plaintiff may not recover for her mental anguish if it resulted from injury or death of someone who does not have a close relationship with the plaintiff." I believe these views have merit although they do not comport with the theory of the majority in this case, or with various other commentators and courts.
Finally, I recognize this court's duty to provide full reparation for wrongful damage. First, however, we must determine whether the damage is wrongful. This in many instances, is a matter of policy which entails a concern for the role of the courts in our society and the ability of the courts to maintain the respect of the public. If the courts impose uncommon results, the entire system of justice falls into disrepute and its structure is endangered. The question of how far courts should go in assessing liability, i.e., in what instances should a court and society limit a defendant's liability, is an important one. It is perhaps best answered by the following:
All rules of conduct, irrespective of whether they are the product of a legislature or are part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken in each case as it arises. (emphasis added.)
Malone, Ruminations on Cause-In-Fact, 9 Stan.L.Rev., 60, 73 (1956).
The liability of the defendant in this case is premised upon the breach of a "special, *588 direct duty created by law...." I have already stated I believe La.R.S. 32:80 is directed toward the protection of children who ride school buses, and not toward the protection of motorists. Assuming, arguendo, the statute does create a "special, direct duty" to the plaintiff motorist in this case, I quote from our opinion in Pitre v. Opelousas General Hospital, 530 So.2d 1151, 1155 (La.1988): "Terms such as `duty' are merely verbal expressions of policy decisions and do not explain them." (emphasis added.) The use of the "duty" analysis in this case is "merely verbal expressions of policy" and I respectfully submit the majority has established bad judicial policy.
NOTES
[1] See discussion infra, § II.
[2] A non-exhaustive list of examples will suffice to illustrate the point. R.S. 32:80 is directed toward the protection of children entering or exiting a school bus; R.S. 32:168-32:174 are designed to protect motorists at railroad crossings; R.S. 32:190 is designed to protect motorcyclists by requiring them to wear helmets; R.S. 32:211-32:219 are designed to protect pedestrians.
[3] The reasoning used by the majority opinion is by no means limited to traffic regulations.
[4] See, Lejeune, supra.