United States District Court of Appeals,

Fifth Circuit.

No. 92-3461.

Richard M. NESOM, Plaintiff-Appellant, Cross-Appellee,

v.

TRI HAWK INTERNATIONAL, Defendant-Appellee-Cross-Appellant,

Kansa General Insurance Company, et al.  Defendant-Appellee.

March 8, 1993.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before DUHÉ and BARKSDALE, Circuit Judges and HUNTER[1], District Judge.

> EDWIN F. HUNTER, Jr., Senior District Judge.

> This Louisiana diversity case was brought by Richard Nesom.  He seeks recovery for mental anguish or emotional distress premised upon the possibility that he might develop Creutzfeldt-Jakob Disease ("CJD"), a fatal neurological disease.  The district court entered summary judgment in favor of Tri Hawk on the basis that plaintiff was not entitled to maintain a cause of action for his alleged "fear of contracting a disease in the future, absent an accompanying physical injury *and* absent any proof that he was actually exposed to the disease which is the source of his fear."[2]  The parties agree that Louisiana law governs.  This Court will interpret questions of state law "de novo".  *Salve Regina College v. Russell,* --- U.S. ----, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

## BACKGROUND

> On April 8, 1987, plaintiff, Richard Nesom, underwent a craniotomy at Meadowcrest Hospital

---

[1]Senior Judge of the Western District of Louisiana, sitting by designation.

[2]The district court noted:

> There is no evidence to support the assertion that the Lyodura used on Nesom had *any* condition which would cause any injury.  The only "condition' of Tri Hawk's product that could have caused Nesom's emotional distress was the possibility that the Lyodura Dr. Culicchia used in his operation had the same contaminating agents as the Lyodura used in Connecticut.  Nesom would have this Court accept as a condition of all of Tri Hawk's product, the condition of one specific package without any proof that the condition would be common to the whole product line.

in Gretna, Louisiana. The operation was performed by Dr. Carl Culicchia, a neurosurgeon. Human dura was grafted to torn tissue in plaintiff's brain. B. Braun Melsungen A.G. ("BBM"), a German company, harvests dura from cadavers, prepares and packages it in sealed containers, and sells it internationally through a number of distributors under the trade name "Lyodura". BBM sold the Lyodura used on Nesom to Tri Hawk, a Canadian corporation. Tri Hawk sold the Lyodura to Meadowcrest in October of 1984.

Shortly after Nesom's operation, Meadowcrest Hospital received an FDA Safety Alert dated April 28, 1987, which stated that there was a risk of transmitting Creutzfeldt-Jakob Disease ("CJD") to surgical patients through possibly contaminated batches of human dura. A case of CJD in Connecticut linked to the use of Lyodura prompted the Alert.[3] The Alert stated that the material in question was prepared by BBM and distributed by Tri Hawk. The Lyodura used in the Connecticut operation was from lot 2105, and the Alert recommended that any Lyodura from packages bearing lot numbers beginning with the digit "2" be disposed of. The Lyodura used in Nesom's operation was also from BBM lot 2105. Lyodura from the same lot does not necessarily come from the same cadaver.[4] The lot number represents one day's production of dura mater.

Upon receiving this Safety Alert, Dr. Culicchia informed Nesom that the dura used in his operation may have been contaminated with CJD-causing agents. At the outset, he told Nesom that they had currently calculated that the likelihood of a recipient of dura from lot 2105 developing CJD was one-in-one thousand.[5] To date, Nesom has not suffered any symptoms of CJD, nor has any doctor diagnosed the presence of CJD during the almost six (6) years since the neurosurgery. Dr. Culicchia stated that it is currently highly unlikely that plaintiff will contract CJD in the future. The longest recorded incubation period for the disease was thirty-one months, and more typically the

---

[3]On March 3, 1987, the F.D.A. advised Tri Hawk of this case.

[4]Counsel noted in oral argument that 75 boxes of Lyodura from lot 2105 were sent to Tri Hawk, and the rest sent to 6 other countries.

[5]Dr. Culicchia stated that this probability was given to him by physicians in the FDA who made their calculations based upon the number of cadavers and boxes comprising lot 2105.

incubation period is six to eighteen months.[6]

On March 16, 1988, Nesom filed this suit against Tri Hawk under the Court's diversity jurisdiction. By amended complaint, Nesom added BBM as a defendant, but the Court subsequently dismissed BBM for lack of personal jurisdiction. The complaint alleges that Tri Hawk is strictly liable for having distributed contaminated Lyodura in this country, and also that it is liable in negligence for failing to test the Lyodura and failing to verify that the processor of the Lyodura had followed stringent procedures.

## DISCUSSION

At the core of this appeal is the question of whether Nesom can maintain a claim for emotional distress absent evidence that the Lyodura was actually contaminated *and* absent evidence of physical injury resulting from the Lyodura. This Court agrees that Nesom cannot maintain this claim under the facts of this case.

Plaintiff argues that Tri Hawk owed a duty to warn Nesom of the potential hazard posed by Lyodura Lot 2105, irrespective of whether the Lyodura utilized in the operation was actually contaminated. Louisiana law does not permit a party to maintain an action for mental anguish based on an alleged "fear" of contracting a disease in the future absent a showing that the party was actually exposed to a contaminated agent. *Broussard v. Olin Corp.,* 546 So.2d 1301 (La.App. 3d Cir.1989). In *Broussard,* a plaintiff was exposed to phosgene gas. He was not allowed to present evidence regarding his fear of cancer, or to recover for his fear of cancer because he could not establish that cancer could result from phosgene gas poisoning. *Broussard, supra,* at 1303. Similarly, Appellant cannot provide the basis for an award for mental anguish resulting from his "fear" of CJD absent proof that the Lyodura used in his surgery was *contaminated or tainted* with CJD. As stated by the district court in its written opinion, there is "... no evidence that Nesom's Lyodura contained CJD-causing agents." The fact that some of the human dura mater in the batch of Lyodura used in plaintiff's surgery could possibly have been contaminated with CJD does not suffice. Plaintiff must show more than a mere possibility.

---

[6]These estimates were provided by Dr. Culicchia.

The starting point for weighing the appropriate Louisiana law in this case is Article 2315 of the Louisiana Civil Code:

Art. 2315. Liability for acts causing damage.

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.  * * *

This article was intended to encompass

innumerable acts which constituted faults under whatever form they appeared.  The framers conceived of fault as a breach of preexisting obligation, for which the law orders reparation, when it causes damage to another, *and they left it to the court to determine in each case the existence of an anterior obligation which would make an act constitute fault.*

*Pitre v. Opelousas General Hospital,* 530 So.2d 1151, 1156 (La.1988), emphasis in original.  With respect to infliction of emotional distress absent physical injury or contact, Louisiana law has been capsulized as follows:

[T]he evolving view is toward the recognition of a duty imposed on the defendant to refrain from the negligent infliction of serious emotional distress in special circumstances where the mental anguish is the clearly foreseeable result or when a special relationship exists between the plaintiff and the defendant.

*Clomon v. Monroe City School Board,* 572 So.2d 571, 583-84 (La.1990).

In *Clomon,* the Louisiana Supreme Court permitted a motorist who struck and killed a child to collect damages for emotional distress from the school bus driver who negligently discharged the child from his bus.  The motorist was permitted to recover despite the fact that she suffered no physical injury or apparent impact to her body, did not know the child, and was found contributorily negligent to boot.  572 So.2d at 573.[7]

*Clomon* reiterated the Louisiana Supreme Court's landmark holding in *Lejeune v. Rayne Branch Hospital,* 556 So.2d 559, 567 (La.1990), which marked Louisiana's abandonment of the "impact" and "zone of danger" rules developed in common law jurisdictions.

A claimant need not be physically injured, nor suffer physical impact in the same accident in order to be awarded mental pain and anguish damages arising out of injury to another.  Nor need he be in the zone of danger to which the directly injured party is exposed.

One must conclude pursuant to *Clomon,* 572 So.2d 571 (La.1990);  and *Lejeune,* 556 So.2d

---

[7]In *Clomon,* the court was sharply divided, and was by no means unified in its decision.

559 (1990), that under special circumstances, physical harm or physical impact is not a prerequisite to recovery for emotional distress.

Despite the language in *Clomon* and *Lejeune,* the Louisiana Supreme Court in *Moresi,* recognized the general rule that, "if the defendant's conduct is merely negligent and causes only mental disturbance, without accompanying physical injury, illness or other physical consequences, the defendant is not liable for such emotional disturbance." *Moresi v. Dept. of Wildlife & Fisheries,* 567 So.2d 1081 (La.1990). However, the court quickly added that in Louisiana there have been deviations from the general rule. *Id.* The court emphasized that in all the cases which permitted recovery for emotional distress absent physical injury, the common factor running through the decisions is that there were "special circumstances which serve as a guarantee that the claim is not spurious." *Moresi, supra.* The court concluded in *Moresi* that the plaintiffs could not recover damages for mental distress which they suffered when they erroneously received a threatening note from DWF agents. *Moresi,* 567 So.2d at 1096.

Similarly, Nesom can not demonstrate that he has been exposed to the CJD agent. To allow someone to recover merely because he fears that he *may* have been exposed to a dangerous substance goes too far. Such circumstances do not provide a sufficient indicia of reliability.[8] To sanction the theory of recovery argued here, would open the door to thousands of plaintiffs who claim that they have suffered damages caused by fear of possible exposure to some dangerous substance or another without even proof of actual exposure to that danger. The special circumstances which guarantee bona fide and genuine claims (*Moresi* ) are not present when the claimant cannot prove that he has been exposed to an injurious substance. Nesom cannot maintain an action for fear of contracting a disease in the future, absent evidence that he was actually exposed to the CJD agent which is the

---

[8]A second case of CJD following a graft of Lyodura appeared in 1988 in New Zealand. *See Updated: Creutzfeldt-Jakob Disease in a second patient who received a cadaveric dura mater graft,* Morbidity and Mortality Weekly Report, Jan. 27, 1989, at 37 (Def.Supp.Ex.G). However, lot 2105 was not distributed in New Zealand. The Connecticut case is the only instance presented to the Court of CJD occurring after a graft of Lyodura from lot 2105.

source of his fear.  There is no such proof here.[9]

The plain language of Rule 56(c) mandates the entry of summary judgment after adequate discovery and upon motion against a plaintiff who does not make a showing sufficient to establish the existence of an element essential to his case, and on which he bears the burden of proof at trial.  Here, by way of repetition, the district court correctly noted that there was no evidence that the Lyodura used in the surgery was contaminated with a CJD agent.  This conclusion is correct.  "No genuine issue of material fact" remains because a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  *Celotex Corp. v. Catrett,* 477, U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).[10]  We find no legal error and the judgment below is

AFFIRMED.

---

[9]During oral argument, counsel for Nesom argued that the recent decision of *Cotita v. Pharma-Plast, U.S.A., Inc.,* 974 F.2d 598 (5th Cir.1992), strongly supported his position.  We find nothing in that case, to the extent it is relevant, to undermine the fact that an essential element of Nesom's case required proof of exposure to the disease which is the source of his fear.  Cotita, a registered nurse, as a result of Pharma-Plast's admitted defective packing, was exposed to the blood of an AID's patient.  He sued Pharma-Plast seeking damages for mental anguish stemming from fear of contracting AIDS.  It is unclear from the record whether Cotita was actually exposed to the HIV virus.  In any event, the issue was not raised or discussed on appeal and the case is of limited relevance to the issues raised in the instant case.

[10]The jurisdictional questions involved with B. Braun Melsungen A.G. and Kansa General Insurance Co., Ltd. are now moot and need not be addressed.