728 So.2d 441 (1999)
Marzell Ike DUMAS, et al., Plaintiffs-Appellants,
v.
ANGUS CHEMICAL COMPANY, et al., Defendants-Appellees.
No. 31400-CA.
Court of Appeal of Louisiana, Second Circuit.
January 11, 1999.
Rehearing Denied February 18, 1999.
Writ Denied April 30, 1999.
*443 Dennis W. Hennen, Monroe, Cusimano & Aswell by Harold W. Aswell, Farmerville, Chester A. Bradley, III & Associates by Chester A. Bradley, III, Monroe, Leger & Mestayer by Michael J. Mestayer, New Iberia, Fayard & Honeycutt by Calvin C. Fayard, Jr., Denham Spgs., Theus, Grisham, Davis & Leigh by Charles H. Heck, Monroe, Herman, Herman, Katz & Cotler by Russ M. Herman, New Orleans, deGravelles, Palmintier & Holthaus by David W. Robinson, Baton Rouge, for Plaintiffs-Appellants.
*444 Lugenbuhl, Burke, Wheaton, Peck, Rankin & Hubbard by Claude F. Bosworth, New Orleans, Davenport, Files & Kelly by Thomas W. Davenport, Shane Craighead, Monroe, Hudson, Potts & Bernstein by Ben R. Hanchey, Monroe, Novack and Macey by Stephen Novack, Mitchell L. Marinello, P. Andrew Fleming, Chicago, IL, Bickel & Brewer by Michael J. Collins, Elizabeth Handschuch, Dallas, TX, Cook, Yancey, King & Galloway by Samuel Caverlee, Shreveport, McGlinchey Stafford Lang by James M. Garner, Deirdre C. McGlinchey, New Orleans, Hartline, Dacus, Dreyer & Kern by C. Vernon Hartline, Jr., Dallas, TX, Cotton, Bolton, Hoychick & Doughty by John Hoychick, Jr., Rayville, Chaffe, McCall, Phillips, Tolar & Sarpy by Peter A. Feringa, Jr., Douglas L. Grundmeyer, New Orleans, Kean, Miller, Hawthorn, D'Armond, McCowann & Jarman by J. Randy Young, Leonard L. Kilgore, III, Baton Rouge, Shotwell, Brown & Sperry by George M. Wear, Jr., C.A. Martin, III, Monroe, Lunn, Irion, Johnson, Salley & Carlisle by Penny N. Nowell, Shreveport, Rountree, Cox, Guin & Achee by Roland J. Achee, Shreveport, Arbour & Aycock by Larry Arbour, West Monroe, Cadwalader, Wickersham & Taft by Kenneth Coleman, Chadbourne & Parke by Jonathan Bank, Los Angeles, CA, Barkley & Thompson by Walter C. Thompson, Jr., Thomas E. Schwab, New Orleans, Zelle & Larson by Terrence C. McRea, Dallas, TX, Onebane, Bernard, Torian, Diaz, McNamara & Abell by Gary P. Kraus, Lafayette, for Defendants-Appelles.
Before MARVIN, C.J., GASKINS and PEATROSS, JJ.
MARVIN, C.J.
In this class action arising out of the 1991 explosion at the IMC Fertilizer plant at Sterlington that injured many plaintiffs, some fatally, who were inside the plant premises, the Plaintiffs Steering Committee [PSC] appeals a summary judgment dismissing the claims for loss of consortium and emotional damages of 270 plaintiffs who were outside the plant premises.
We affirm the summary judgment as to 267 of these plaintiffs, while reversing as to Melvin Ritchie and the loss of consortium claims of Daniel Adkinson and Joshua Adkinson, affirm the dismissal of the remaining claims of Daniel Adkinson and Joshua Adkinson, and remand.

FACTS
The explosion of the plant, which produced nitroparaffins, occurred May 1, 1991, causing the town of Sterlington to be evacuated for over 30 hours. Among the several defendants who were eventually joined in this action, Angus Chemical Company, owned the plant. IMC Fertilizer, Inc., operated the plant. Other appellees in this appeal are Mid-South Fire Protection, Inc. and James Machine Works, Inc., who adopt the brief filed by Angus. We reversed the trial court, which had earlier denied the motion for class action certification in Dumas v. Angus Chemical Co., 25,632 (La.App.2d Cir. 3/30/94), 635 So.2d 446, writ denied.
Against some 287 plaintiffs who asserted emotional damages, Angus moved for summary judgment in 1996. Angus would ultimately seek dismissal of 319 claimants. Later in 1996, IMC moved for summary judgment against the same plaintiffs originally named in Angus's motion, adopting Angus's contentions. Eventually, IMC amended the number of plaintiffs to 270. This is apparently the correct number of plaintiff-appellants before us, one appellant having been identified later as being named twice with a slightly different name. One plaintiff-appellant, Melvin Ritchie, was not targeted by either Angus or IMC. We shall reverse the summary judgment dismissal of Melvin Ritchie.
After unsuccessfully seeking a new trial, the PSC appealed the summary judgments in favor of all defendants. In this court, the PSC sought to supplement the record with the testimony and exhibits from the class certification hearing, with the deposition of Dr. Paul Lees-Haley that was attached to PSC's motion for new trial, and with Angus's petition in the trial court against IMC that was referred to in a supplemental memorandum in opposition to summary judgment. Angus's motion in this court seeks to strike the deposition of Dr. Paul Lees-Haley. We *445 shall later address these motions in this opinion.

SUMMARY JUDGMENT
We conduct a de novo review of the documents supporting and opposing a motion for summary judgment under the same criteria which govern a trial court's determination of whether summary judgment is appropriate. Anderson v. Allstate Ins. Co., 29,847 (La. App.2d Cir.9/24/97), 699 So.2d 1160.
La. C.C.P. art. 966, as amended in 1996, removed the overriding presumption in favor of trial on the merits and required equal scrutiny of documents submitted by each party for and against summary judgment. Hayes v. Autin, 96-287 (La.App. 3d Cir.12/26/96), 685 So.2d 691, writ denied. In 1997, Article 966 was further amended for the purposes of clarifying the 1996 changes and legislatively overruling all cases inconsistent with Hayes v. Autin, supra. See 1997 La. Acts 483, § 4. We apply these amendments to art. 966 retroactively.
The PSC questions the appropriateness of summary judgment in a class action before there is a determination of common issues applicable to the class as a whole. The PSC refers the court to the law applicable to class actions at the time of the accident. The PSC particularly directs our attention to section C of Article 593.1, which was repealed in 1997. Article 593.1(C) provides:
After determining that the pending action is appropriate for litigation as a class action, the court may ... adopt a plan for the management of the class action litigation.... The management plan may provide for separate trials of the following issues in the order herein set forth:
(1) Liability for all damages.
(2) Determination of any item of damage common to the class and the basis for assessment thereof.
(3) Assessment of common damages on the basis determined in (2) above or on such basis as may be appropriate in the absence of any prior determination of the basis thereof.
(4) Determination and assessment of individual damages not common to the class, either in one trial or in a series of trials involving one or more members of the class.
Nothing in Article 539.1 precludes summary judgment at this stage of the class action. In Andry v. Murphy Oil, U.S.A., Inc., 97-0793 (La.App. 4th Cir.4/1/98), 710 So.2d 1126, writ denied, the defendants complained that the geographical area defined by the court when certifying the class was much broader than what the evidence supported, arguing that claims for certain types of damages were without merit. The court stated:
In light of the objective of this procedural device, which is the efficient resolution of common issues applicable to a large number of claims, it was reasonable for the court to establish a geographic boundary for the class that was broad enough to encompass all potential class members. If, as Murphy argues, there is no evidence to support some types of claims, the class action will allow these to be disposed of, as a group, very efficiently by other means, such as summary judgment.

710 So.2d at 1130. Our Emphasis.

The Proof of Claim Form
The PSC utilized a proof of claim form as the foundation for the emotional distress alleged by each respective plaintiff-appellant. Appellees then used these proof of claim forms to support the motions for summary judgment. The PSC contends that the forms do not constitute a prima facie showing sufficient to support dismissal of the claims of 270 appellants on summary judgment.
The burden of proof remains with the moving party. If the mover for summary judgment does not bear the burden of proof at trial on the matter before the court on summary judgment, the mover is not required to negate all essential elements of the adverse party's claim, action or defense. Instead, the mover need only point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action or defense. If the adverse party thereafter fails to produce factual support *446 sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. Article 966, as amended.
In light of subsection (C)(2) of Article 966, the proof of claim forms were sufficient for appellees, as movers not bearing the burden of proof at trial, to meet their burden when moving for summary judgment. These proof of claim forms establish to our satisfaction that 269 of these appellants, based on their respective claim form, as a matter of law, cannot recover emotional distress damages.

MENTAL DAMAGES
In granting summary judgment, the trial court correctly summarized the circumstances under which a plaintiff may recover damages for emotional distress:
Commonly, damages for emotional distress are awarded to victims who have suffered contemporaneous personal injury. However, Louisiana courts have recognized a few instances when emotional distress damages may be awarded in the absence of physical injury to the victim.
First, in some situations mental distress caused by damage to one's property may be compensable in damages. Second, a victim may recover mental anguish damages when the conduct is directed at him and the circumstances show an especial likelihood of genuine and serious mental distress. Moresi v. State, 567 So.2d 1081 (La.1990). Third, under narrow circumstances, emotional distress damages may be awarded to a person who suffers mental anguish as the result of another's physical injury. In these so-called "bystander" cases.... Fourth, emotional distress damages have been awarded to one who is a participant in an accident. Clomon v. Monroe City School Bd., 572 So.2d 571 (La.1990).
Louisiana courts have also recognized a cause of action for intentional infliction of emotional distress. White v. Monsanto, 585 So.2d 1205 (La.1991). In these cases the defendant's conduct must be outrageous and he must have intended to cause emotional distress.

Intentional Infliction of Emotional Distress
The standards to be used when analyzing a claim for intentional infliction of emotional distress are set forth in more detail in cases such as White v. Monsanto, supra:
[I]n order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

Id., 585 So.2d at 1209.
Mere threats, annoyances and indignities are not sufficient to impose liability. Conduct is considered extreme and outrageous when it goes "beyond all possible bounds of decency" and is "regarded as atrocious and utterly intolerable in a civilized community." White, 585 So.2d at 1209. The distress suffered must be severe, "such that no reasonable person could be expected to endure it." Id., 585 So.2d at 1210. Moreover, the defendant's conduct "must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like." Id., 585 So.2d at 1210. Our emphasis.
The PSC has filed excerpts from numerous depositions in an attempt to establish that even if the explosion was not intended, the defendants still knew that an explosion was substantially certain to occur based on the installation of a nitromethane line in proximity to the RJ-29 compressor. However, the PSC failed to establish a prima facie case that defendants intended to cause the dismissed claimants severe emotional distress. Even if we assume that Angus or any of the other defendants intended to destroy the plant, it is absurd to suggest that not only would their intent be to kill or wound workers and cause millions of dollars in damages, but also that their conduct would be calculated to cause severe emotional distress *447 directed at plant workers, Sterlington residents, and their relatives spread around the world.
In White, supra, a foreman at a Monsanto refinery called White and several of her co-workers "mother f____," accused them of sitting on their "f____ asses" and threatened to fire them, causing White to have a panic attack. Reversing a judgment in White's favor, the court concluded that while the foreman intended to cause some distress, there was no indication that "his spontaneous, brief, intemperate outburst was intended to cause emotional distress of a severe nature." White, 585 So.2d at 1211.

Bystander Recovery
To certain claimants in certain circumstances Louisiana now permits recovery for mental pain and anguish suffered as a result of physical injury to a third person. See La. C.C. art. 2315.6 and Lejeune v. Rayne Branch Hosp., 556 So.2d 559 (La. 1990). First, the claimant must either view the accident or injury-causing event or come upon the accident scene soon thereafter and before there is substantial change in the victim's condition. Second, the direct victim of the traumatic injury must suffer such harm that it can reasonably be expected that someone in the claimant's position would suffer serious mental anguish from the experience. Third, the emotional distress must be both serious and reasonably foreseeable to allow recovery. Compensation should only be allowed when the emotional injury is both severe and debilitating. Fourth, instead of determining the class of bystanders eligible to recover, the court declined to decide whether the class should be limited to close relatives or expanded to include those with a close relationship to the victim. Lejeune preceded the 1991 Sterlington explosion. La. C.C. art. 2315.6 codification occurred afterward.
Courts have analyzed the meaning of the first Lejeune standard, that the claimant either view the accident or come upon the accident scene soon thereafter and before substantial change occurs in the victim's condition. In Chamberlain v. State Through Dept. of Transp. and Development, 624 So.2d 874 (La.1993), Lejeune recovery was denied when the mother was telephoned several hours after her son's accident and the father, who was fishing offshore at the time of the accident, was notified of the accident by water patrol. Thus, neither parent was present when their son's accident occurred or shortly thereafter, and both parents learned of the accident from others.
Some of the dismissed claimants assert in their affidavits that "after the explosion [they] witnessed individuals who were bloodied and injured, people who were panicking, and people who were fearing bodily harm and/or death." This language is not sufficient to state a bystander claim under Lejeune. While Lejeune did not conclusively limit those eligible to recover, some boundaries were set so that the claimant still must be closely related to the victim or at least have a close relationship with the victim. The language used in most of the affidavits does not indicate such relationship. Most appellants did not negate that the "individual" referred to in his or her affidavit may be a stranger to that appellant. Moreover, the time requirement is also lacking. The affidavit language does not tell us if the particular claimant viewed this scene at the time of the explosion, shortly thereafter, or several hours later. We cite two examples: David Cahill used such language in his affidavit despite the fact his proof of claim form places him in Tacoma, WA, on May 1, 1991. Tammy Balsamo states in her affidavit that she saw her parents "bloodied and injured," but does not state when she viewed her injured parents.

Direct Participant
The PSC argues that "[a]ny person near or at work in this plant when this explosion occurred or during its aftermath was a participant in a harm-causing event occurring under circumstances likely to cause emotional distress, if not physical injuries," citing Clomon v. Monroe City School Board, supra.
Clomon had a cause of action for severe emotional distress, without contemporaneous physical injury, that arose when her car struck and killed a child who had just exited a school bus. The court recognized that *448 Lejeune did not address every claim for emotional distress due to a third party injury, but only "the most typical class, a suit by a plaintiff emotionally distressed by his loved one's injury against a tortfeasor based purely on a breach of the latter's general duty of care." Clomon, 572 So.2d at 575. Based on the breach of a direct statutory duty owed to Clomon [a motorist] by school board employees on the bus involved in the tragedy, the board was held liable for Clomon's mental suffering. In separate concurrences, Justices Watson and Hall each wrote that Clomon was entitled to recover for her own emotional damages because she was a participant in the accident, not a Lejeune bystander.
The issue of whether an accident participant suffering only mental damages can recover when no direct statutory duty is owed was discussed in Guillory v. Arceneaux, 580 So.2d 990 (La.App. 3d Cir.1991), writ denied. Guillory suffered emotional damages when her car hit Arceneaux, who was lying in the middle of the interstate after having been previously hit by a truck. The court distinguished Lejeune because Guillory was not a bystander. The court found the case to be more analogous with Clomon, but determined that no direct, special statutory duty was owed to Guillory. Nonetheless, the court found that Guillory had stated a cause of action because she was a participant in the accident.
The PSC also cites Pourciau v. Allstate Ins. Co., 98-473 (La.App. 3d Cir.4/17/98), 712 So.2d 250, writ granted in part. There the court considered supervisory review of the trial court's denial of exceptions of no cause of action and no right of action. Pourciau and her friend were skating when the friend was struck and killed by a vehicle. Pourciau allegedly avoided the accident by swerving and falling to the ground. Pourciau sought recovery for her own mental anguish and emotional injury as well as the emotional damages she sustained witnessing her friend's fatal injury. Granting the writ in part and remanding the case to the trial court, the supreme court ruled that Pourciau could not recover mental anguish damages for the injury to her friend since she was not a member of the classes of persons recognized in La. C.C. art. 2315.6. However, the court allowed her to proceed on her own claim of mental anguish based on her own involvement in the accident. Pourciau v. Allstate Ins. Co., 98-1098 (La.4/29/98), ___ So.2d ___, 1998 WL 231409.
Louisiana courts have allowed recovery for mental distress suffered in an "ordeal in progress." Emotional trauma suffered without physical injury by the occupant of a vehicle involved in an accident was found legally compensable in Butler v. Pardue, 415 So.2d 249 (La.App. 2d Cir.1982). See also Carroll v. State Farm Ins. Co., 427 So.2d 24 (La.App. 3d Cir.1983), where a plaintiff recovered for mental anguish suffered during an ordeal in progress when a boat became airborne and passed directly over her.
In Harper v. Illinois Cent. Gulf R.R., 808 F.2d 1139 (5th Cir.1987), the plaintiffs alleged mental distress while undergoing an ordeal in progress when they were evacuated for two weeks after a train transporting chemicals derailed one mile from their home. The court emphasized that in order to recover for fear and mental anguish sustained in an ordeal in progress, a plaintiff must prove that "he was involved in a hazardous situation-that is, within the zone of dangerand that his fear was reasonable given the circumstances." Harper, 808 F.2d at 1141. Our emphasis. The Harper plaintiffs were denied recovery because they were found not within the zone of danger. Compare McDonald v. Illinois Cent. Gulf R. Co., 546 So.2d 1287 (La.App. 1st Cir.1989), writ denied. There a husband and wife were both considered to be within the zone of danger for the same train derailment and explosion discussed in Harper. The husband was in his store, 250 yards away from the track, when the railroad car exploded. The wife, who was at home only a half mile away, heard the explosion and saw the fire.
Regardless of whether recovery is premised on "participation" or an "ordeal in progress," the inquiry remains whether the claimant was "involved" to a reasonable degree [proximity in time and distance] in the event causing harm. Many of the dismissed claimants were in Louisiana cities other than Sterlington *449 at the time of the explosion, and thus were not "participants" who were "involved" in the explosion. Still others were in other states or even foreign countries at the time of the explosion. One claimant was on a naval vessel in the Mediterranean Sea. This record supports Angus's broad claim that no appellant negated that he or she was closer than one mile to the plant at the time of the explosion.

Especial Likelihood of Genuine and Serious Emotional Distress
The theory of recovery of damages for mental disturbance without other injury was examined in Moresi v. State Through Dept. of Wildlife and Fisheries, 567 So.2d 1081 (La.1990). The court acknowledged the general rule followed by most jurisdictions that "if the defendant's conduct is merely negligent and causes only mental disturbance, without accompanying physical injury, illness or other physical consequences, the defendant is not liable for such emotional disturbance." Id., 567 So.2d at 1095. Moresi also recognized that some Louisiana cases have deviated from this general rule. Providing an illustrative list of the circumstances in these cases, the court noted the cases "have in common the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." Moresi, 567 So.2d at 1096. Our emphasis.
One category of cases cited in Moresi includes cases "allowing damages for fright or nervous shock, where the plaintiff was actually in great fear for his personal safety." Moresi, 567 So.2d at 1096. Our emphasis.
Many of the dismissed claimants allege that they experienced emotional distress due to fear for the safety of their loved ones. Some claimants were not even sure if the person they were concerned about was in the plant or even in Sterlington at the time of the explosion. For instance, Arnice Seabrooks stated in his affidavit that he "heard about the explosion on the news" in San Diego and he was "concerned because [he] suspected [his] father worked in Sterlington at the plant." This is obviously not the fear for one's personal safety contemplated by Moresi.
Many claimants cannot recover for their fear for the safety of others. See Rivera v. United Gas Pipeline Co., 96-502 (La.App. 5th Cir.6/30/97), 697 So.2d 327. There several plaintiffs, who were far from the scene of a gas leak, complained of fear and mental stress due to not knowing the condition of their children who were nearer the scene. Denying recovery to these plaintiffs, the court recognized the general rule that Louisiana does not permit recovery for mental anguish caused by another's injury or suffering, except in Lejeune bystander situations. See also In Re Air Crash Disaster Near New Orleans, La. On July 9, 1982, 764 F.2d 1084 (5th Cir.1985). There a father could not recover for the concern he had over his family's safety after a plane crashed in the family's neighborhood.
Other appellants cite fear of having to work at the plant, driving by the plant, or worrying about another explosion when the plant's alarm sounds as evidence of their mental injury. Angus contends that these dismissed claimants cannot recover for fear of future accidents. In Nesom v. Tri Hawk Intern., 985 F.2d 208 (5th Cir.1993), the plaintiff was possibly exposed to a fatal disease when tissue was grafted onto his brain. Nesom was not allowed to recover for his fear that he might contract the disease in the future. The court noted:
To allow someone to recover merely because he fears that he may have been exposed to a dangerous substance goes too far. Such circumstances do not provide a sufficient indicia of reliability. To sanction the theory of recovery argued here would open the door to thousands of plaintiffs who claim that they have suffered damages caused by fear of possible exposure to some dangerous substance or another without even proof of actual exposure to that danger.

Nesom v. Tri Hawk Intern., 985 F.2d at 211.
The PSC in turn cites Vallery v. Southern Baptist Hosp., 630 So.2d 861 (La.App. 4th Cir.1993), writ denied. Vallery, a security guard, was unknowingly exposed to HIV after *450 an AIDS patient bled on his unprotected hand as he tried to restrain the patient. Vallery had sexual relations with his wife before he was informed that the patient had AIDS. His wife was allowed to proceed with her claim for negligent infliction of emotional distress based on her fear of contracting the disease. We note that the facts of neither Nesom nor Vallery are particularly analogous to this case. In each case, the plaintiffs fear was directly related to an impact that plaintiff received. Each feared the actual future development from that impact. Unlike appellants, they did not fear a future impact. In contrast, many claimants in this case expressed fear of a future explosion or other similar accident. We find no heightened risk on this record of a future explosion merely because there was an explosion in 1991.
Some claimants do not even allege fear for their own future safety, but fear for the future safety of another. For example, the affidavit of appellant Carolyn Beavers reads in part:
My husband worked at IMC. I became fearful of the fact that things could happen out there again while he was at work. I experienced nervousness at the thought of him being at a potentially dangerous place on almost a daily basis.
Another category of cases having the "especial likelihood of genuine and serious mental distress" are cases involving "damage to one's property while the plaintiffs were present and saw their property damaged." Moresi, 567 So.2d at 1096. Some claimants have alleged "property" damage either in their proof of claim form or affidavit. Not one of these claimants states, however, what property, where, was damaged or whether he or she was present when or shortly after that "property" was damaged.

Pitre Analysis
The PSC places great reliance on two statements made in Pitre v. Opelousas General Hosp., 530 So.2d 1151 (La.1988). The first statement is that "[t]he persons at whose disposal society has placed the potent implements of technology owe a heavy moral obligation to use them carefully and to avoid foreseeable harm to present or future generations." Id., 530 So.2d at 1158. The second statement is "a physician who intentionally, recklessly or in bad faith violates his legal duty shall be liable for all damages, foreseeable or not, that are a direct consequence of his breach of obligation." Id., 530 So.2d at 1161.
The PSC argues that Pitre emphasized a special duty owed by every manufacturer. The PSC also contends that an intentional, reckless or bad faith violation of a legal duty results in liability for all damages, foreseeable or not, that are a direct consequence of this breach as long as an ease of association between the duty and the risk is found. The PSC concludes that defendants owed these appellants a special duty created by a special relationship, and that this independent duty is not limited by Lejeune, Clomon or the determination of any zone of danger.
The PSC invites us to use this language from Pitre as the basis for an expansion of the traditional area of recovery for participant and bystander claimants alleging emotional damages into a new area allowing recovery for mental damages suffered by nonparticipant and non-bystander claimants. The inherent problem with this contention [allowing recovery for mental damages absent other injury], has been explained:
[T]here are ample policy concerns for setting limits or administrative boundaries establishing the permissible instances of recovery. There are fears of flooding the courts with "spurious and fraudulent claims"; problems of proof of the damage suffered; exposing the defendant to an endless number of claims; and economic burdens on industry. While these fears are legitimate, they can be addressed by limiting the circle of plaintiffs who can recover so that a deserving plaintiff is compensated for serious emotional damages without opening the door to more troublesome claims.

Lejeune v. Rayne Branch Hosp., 556 So.2d at 566.
Citations omitted.
Under the application of Pitre suggested by the PSC, defendants would be faced with open-ended exposure to liability, and would *451 be saddled with a duty owed to anyone around the world who feared for the safety of a relative in or near Sterlington, or owed to one who may one day drive by the plant or hear the plant alarm sound. We distinguish, of course, the claimants in this action who may have been owed a duty as accident participants or Lejeune bystanders. However, merely because a duty may have been owed to some claimants does not mean the same duty was owed to each of these plaintiff-appellants. Policy considerations limit the plaintiffs who may recover. The fact that a duty is owed to some plaintiffs does not mean that duty extends to protect everyone against every conceivable risk. Lejeune, supra.
In Pitre, Clomon, Lejeune and Moresi, cited supra, the court carefully delineated certain rules and guidelines to be used when examining claims of solely emotional injury. The case law reflects a concern about courts being overwhelmed by dubious claims of mental suffering. We apply those principles.
The PSC further argues that its position is supported by the fact that because Angus possibly engaged in ultrahazardous activity, Angus may be burdened with the obligation of absolute liability under La. C.C. art. 667. At the time of the explosion, Article 667 read:
Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.
One scholar has explained the meaning of the phrase "the cause of any damage" in Article 667:
Article 667 imposes civil responsibility for acts, constructions, and activities that may be "the cause of any damage" to neighboring landowners. This, however, does not mean that all damage, however caused, is compensable under this article....
The terms of Article 667 are sufficiently broad to support awards for structural damages to immovable property, for depreciation of land values, and for all injuries to persons. Most actions brought or decided under Article 667, however, involve claims for structural damage caused to immovable property. When such damage is shown, courts may also award damages for inconvenience, for injury to a person's health, and for mental anguish.

1 A.N. Yiannopoulos, Predial Servitudes § 51, at 143, in 4 Civil Law Treatise (1997). Footnotes omitted. Our emphasis.
We must conclude that liability under Article 667 does not extend to any injury suffered by any "neighbor."
Moreover, we must also conclude that not every claimant is within the class of people to whom a duty is owed under Article 667. The term "proprietor" in Article 667 has been interpreted to apply not only to a landowner, but also to any person whose rights derive from the owner. Inabnet v. Exxon Corp., 93-0681 (La.9/6/94), 642 So.2d 1243. A landowner, however, does not owe a duty under Article 667 to everyone: "Persons that do not qualify as proprietors, such as guests, contractors, and members of the public, may have a variety of remedies against a landowner under the law of delictual obligations ..., but not for violation of obligations established by Articles 667 and 668." Yiannopoulos, supra, § 44.

Loss of Consortium Claims
The PSC argues that the trial court was inconsistent in its ruling because despite writing that it wanted to preserve the loss of consortium claims, the court ultimately dismissed these claims. The trial court wrote:
Finally, it should be noted that the proof of claim forms did not contain a place for prospective class members to claim loss of consortium as an element of their damages. As a result, there may be some claimants whose claim form lists only emotional distress but who in actuality may have a viable loss of consortium claim that is separate and apart from any emotional distress claim. These claimants should be allowed to remain in this suit in order to pursue their loss of consortium claims.
In applying these principles to the case at bar, the Court finds that there are open *452 questions of material fact as to viability of those claims brought by people who ... may have a loss of consortium claim.
We respectfully disagree with PSC's contention. The trial court was clearly referring to only those claimants who factually supported a "viable" loss of consortium claim, as distinguished from claimants who simply asserted the conclusory loss of consortium. This is evident because the trial court also stated it was considering each affidavit executed by a targeted class member.
A claim for loss of consortium is derivative of the primary victim's injuries. Ferrell v. Fireman's Fund Ins. Co., 96-3028 (La.7/1/97), 696 So.2d 569. In order to establish a claim for loss of consortium, a claimant must factually support the defendant's liability, the damage suffered by the primary victim, and his or her loss of consortium damages. Peck v. Wal-Mart Stores, Inc., 96-645 (La.App. 3d Cir.11/6/96), 682 So.2d 974. The PSC attempted to support loss of consortium claims for most of the dismissed claimants by affidavits.
Affidavits that are devoid of specific underlying facts to support a conclusion of ultimate "fact" are not considered legally sufficient to defeat summary judgment. See National Gypsum Co. v. Ace Wholesale, Inc., 96-215 (La.App. 5th Cir.11/26/96), 685 So.2d 306, writ denied. Similarly, ultimate or conclusory facts or conclusions of law are not to be utilized on a summary judgment motion. Ouachita Nat. Bank (Premier Bank, N.A.) v. Palowsky, 570 So.2d 114 (La.App. 2d Cir. 1990).
The respective affidavits of the consortium claimants are replete with standard phrases that do not meet the Ferrell requirements. These phrases include:
The sexual relationship and expressions of intimacy between my spouse and I have been injured as a result of the explosion...
The love and affection provided by my children to me was lessened and/or detrimentally affected because of the explosion...
There has been an alienation of love and affection between myself and my children as a result of the explosion ...
The relationship between me and my child/children has been injured because I was unable to devote the same amount of time, love and affection to them as a result of the explosion ...
As a result of the explosion ... and on a continuing basis, I have been unable to provide the same level of material services to my [minor children, spouse and/or dependent parents], as I provided before the explosion.
As a result of the explosion ... I have been unable to support, aid and assist my [spouse, children and/or dependent parents] at the same level as before the explosion because of my mental and/or emotional injuries.
Since the explosion ..., I did not receive the same level of support, aid and assistance from my parents as I received before the explosion.
My family and I have suffered mental and/or emotional injuries which has resulted in a loss of happiness or felicity as a result of the explosion ...
As a result of the explosion ..., I have suffered physical manifestations of my emotional injury, including but not limited to, loss of hair, rashes, ulcers and high blood pressure.
As a result of the explosion ... I now experience fear and anxiety when I hear the alarm go off at the IMC plant fearing another explosion.
As a result of the explosion ... I now experience fear and anxiety when I drive by the IMC plant.
As a result of the explosion ... I suffered episodes of crying, rage and anger.
As a result of the explosion ... I had to seek emotional comfort and assistance from my pastor and/or friends.
As a result of the explosion ... I have suffered sleepless nights and/or nights of interrupted sleep.
As a result of the explosion ... my child's grades suffered.

*453 On May 1, 1991, after the explosion, I witnessed individuals who were bloodied and injured, people who were panicking and people who were fearing bodily harm and/or death.
It is my opinion that the accident was caused by willful, wanton and reckless disregard of public safety in the storage, handling or transportation of hazardous or toxic substances which was manifested by the explosion ...
In most circumstances, the language used in the actual affidavits of appellants tracked that listed above. Another phrase frequently used was "I had to undergo medical treatment for physical injuries and/or mental injuries incurred as a result of the explosion...."
Some claimants also included a personal statement in their affidavit. Nonetheless, these affidavits failed to indicate either or both exactly what injury the claimant suffered as well as what injury the primary victim suffered that serves as the basis for the loss of consortium claim. The statement "My father [or mother] was at the plant at the time of the explosion," as used by some, does not assist our analysis. Reviewing these documents submitted in opposition to summary judgment, we need a more detailed statement than a suggestion that the primary victim may have suffered an injury at the plant. The purpose of the affidavit is to set forth specific facts, not conclusions. With respect to some plaintiffs, however, depositions provide us with additional information to resolve the summary judgment issue.
Leigh Ann Adkinson, on behalf of Daniel and Joshua Adkinson, uses generic language to describe loss of consortium claims. However, she further alleges in the affidavit that the boys's "relationship with their father was significantly affected as a result of the explosion[,]" thus not limiting our analysis to the generic language. Their father, Vernon Adkinson, was at the plant when it exploded. He was physically injured in the explosion after being hit with shrapnel from the blast, as we learn from our examination of Vernon Adkinson's deposition. His deposition, filed into evidence at the class certification hearing, lends support to the consortium claim of his children. The deposition establishes his injury as the primary victim, an essential element in a loss of consortium claim. Therefore, Daniel and Joshua Adkinson have preserved their loss of consortium claims.

Motion to Supplement
The PSC filed two motions with this court to supplement the record, one of which involves the deposition of Dr. Paul Lees-Haley that was attached as an exhibit to the motion for new trial, but not offered or accepted as evidence at the hearing on that motion. Angus moved to strike that deposition.
These motions to supplement and to strike were referred to the merits of the appeal. Angus objects to the deposition of Dr. Lees-Haley. The designation of the record includes "[a]ll exhibits attached to any memoranda submitted in the Motion for New Trial proffered and/or introduced into evidence at hearing on Motion for New Trial."
The deposition in question was taken on two dates, the earliest being nearly two months after the hearing on the motion for summary judgment. Dr. Lees-Haley repeatedly stated in his deposition that he had not personally met or seen any of the claimants and was therefore not in a position to provide a diagnosis for any appellant. He had only reviewed depositions of some appellants, notes taken by his assistants who read other depositions, claim forms, reports and medical records. Even should we ignore the motion to strike, we must conclude his deposition does not avail PSC's attempt to defeat summary judgment. Under the circumstances of this record, we shall grant the motion to strike Dr. Lees-Haley's deposition while otherwise granting the motions to supplement to record.

DECREE
We reverse the judgment as it dismisses the claims of Melvin Ritchie. We further reverse the judgment as it dismisses the loss of consortium claims of Daniel Adkinson and Joshua Adkinson, but otherwise affirm the judgment as it dismisses the emotional distress *454 claims of Daniel Adkinson and Joshua Adkinson. In all other respects, the judgment is affirmed for the remaining 267 plaintiffs-appellants. Costs of the appeal are assessed to appellants. We remand the case to the trial court for further proceedings consistent with this opinion.

APPLICATION FOR REHEARING
Before MARVIN, C.J., NORRIS, STEWART, GASKINS and PEATROSS, JJ.
Rehearing denied.