| ¶ DREW, J.
Norma Cantrelle and Charmaine Can-trelle Chaisson appeal a judgment dismissing, on a motion for summary judgment, their suit against their attorney Keith Whipple to recover excess attorney fees they allege Whipple charged them.
We reverse and remand.

FACTS

In 1983, Carrol Cantrelle approached attorney Keith Whipple about representing him and his family members in a lawsuit seeking damages for injuries suffered as the result of a March 1983 rear-end auto collision. Whipple agreed to take the case.
On March 21, 1984, Whipple, on behalf of Norma Cantrelle (“Norma”), Charmaine Cantrelle Chaisson (“Charmaine”) and other members of the Cantrelle family, filed suit (“first suit”) against several defendants including Allstate, the Cantrelles’ UM carrier. Whipple, who had previously represented Carrol Cantrelle in a criminal matter, also represented the Cantrelles in various other legal matters while this suit was pending. Whipple contends a written contingency fee contract was executed which set out his fee at 40%, and 50% if the matter was appealed. Mr. Cantrelle counters that there was never a written contract, and that he agreed to a fee of 20% if the case was settled out of court and 25% if the case went to court.
After every defendant except Allstate settled, the case proceeded to trial. Following trial in July 1985, judgment was rendered against Allstate and in favor of Norma for $255,000 and in favor of Charmaine for $38,992.71. Allstate paid $255,006.53 to Norma, of which Whipple retained 40%, or $102,002.61, as his attorney fee. Allstate paid $38,992.71 to Charmaine. Whipple also retained 40% of this amount, or $15,597.08, as his attorney fee.
| ¡.Whipple had Norma and Charmaine sign separate disbursement sheets in September 1985 which set out the costs and attorney fees, but not the specific percentage withheld. These sheets, which were signed by two witnesses, stated:
I hereby acknowledge that I have read this disbursement sheet and I hereby authorize my attorneys to disburse in accordance therewith. I further acknowledge that I am specifically authorizing my attorneys to pay the aforesaid fees and expenses and do release them from any further accounting to me. I hereby acknowledge that I will pay any outstanding balance due on any medical account or to any physician or medical facility which may have rendered treatment to me for injuries received in this accident. I hereby acknowledge receipt of the funds above listed as a fair and just settlement of my claims herein.
*834 On July 11, 1985, Whipple, on behalf of the same plaintiffs in the first suit, filed suit (“second suit”) against Allstate seeking penalties and attorney fees for Allstate’s arbitrary and capricious failure to pay their UM claims. After two appeals of pre-trial rulings were resolved in favor of the plaintiffs, Allstate settled the suit in June 1990, agreeing to pay $150,000 to Norma and $10,000 to Charmaine. Whipple withheld 50% of these amounts as his attorney fee. Norma and Charmaine again signed separate disbursement sheets which set forth the attorney fees withheld. Except for the deletion of language relating to payment of medical bills, the acknowledgment/authorization paragraph in each of these disbursement sheets was identical to the acknowledgmeni/authorization paragraph quoted above.
In July 1990, Walter Antin wrote to Whipple that he had been hired by Norma to review the attorney fees charged by Whipple in the two suits. Antin requested that Whipple provide a detailed accounting and substantiation of the fees as well as a copy of any contract for legal services performed for Norma.
In April 1991, Norma and Charmaine filed suit against Whipple to recover what they allege were amounts withheld in excess of the orally agreed-upon ^attorney fee of 25%. In a judgment rendered on November 6, 1998, this suit was dismissed on Whipple’s motion for summary judgment. In September 1999, Whipple filed a rule to tax costs. The judgment was amended to state that Norma and Charmaine were jointly, severally and in solido liable for $782.95 in court costs plus interest. Norma and Charmaine appealed these judgments. Due to the recusal of our colleagues on the First Circuit, this matter was transferred to this court on order of the supreme court.

DISCUSSION

Summary Judgment

Norma and Charmaine argue that the trial court erred in granting summary judgment because there are remaining genuine issues of material fact concerning the amount of the contingency fee contract, whether the disbursement sheets from the second suit are in authentic form, whether Whipple breached his duty to his clients and whether the attorney fees charged are reasonable.
We conduct a de novo review of the documents supporting and opposing a motion for summary judgment under the same criteria which govern a trial court’s determination of whether summary judgment is appropriate. Dumas v. Angus Chemical Co., 31,400 (La.App.2d Cir.1/11/99), 728 So.2d 441, writ denied, 99-0751 (La.4/30/99), 741 So.2d 19.
The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action allowed by law. La. C.C.P. art. 966(A)(2). Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the moving party is entitled to judgment as a matter of law. Art. 966(B). A fact is material if its existence or nonexistence may be essential to the plaintiffs cause of 14action under the applicable theory of recovery. Curtis v. Curtis, 28,698 (La. App.2d Cir.9/25/96), 680 So.2d 1327.
At the heart of this controversy is the correct contingency fee percentage agreed upon by the parties. Norma and Charmaine together testified in a February 1998 joint-affidavit that: (i) in June 1983, they entered into an oral agreement with Whipple to represent them in the personal injury suit on a 25% contingency fee basis; (ii) the agreement was never reduced to writing; (iii) they never agreed to pay Whipple 40% or 50% for his representation; and (iv) Whipple did not inform them or explain to them that he was withholding *835 40% and 50% instead of 25% when he released the proceeds of the two suits.
Submitted in opposition to the motion was an affidavit from Carrol Cantrelle, husband of Norma and father of Charmaine. Carrol related that in June 1983, he entered into an oral agreement with Whipple to represent Norma and Charmaine in their personal injury action against Allstate for a 20% contingency fee if the case was settled out of court, or a 25% contingency fee if the case went to court. Carrol further declared that he never discussed a fee arrangement with Whipple for his representation in the second suit. Carrol concluded by stating that he never agreed that Whipple would receive 40% or 50% for his representation in the two cases.
Whipple testified in his deposition that Norma and Charmaine had a written contract in which he was to receive 40%, or 50% if the case was appealed. He could not remember if all the plaintiffs signed one contract or if each signed a separate contract. There was not a separate contract for the second suit, and Whipple assumed that the first contract would cover both suits.
Whipple explained that his normal procedure at the time was to keep the contract in the client’s file without making copies of the contract. He believed |Bthat Norma or Charmaine removed the contract from their case file when they had unobserved access to the file at Whipple’s office shortly after they received their checks from the second suit. Whipple did not have a copy of the contract. Whipple testified that he always uses a written contract in personal injury cases.
Norma and Charmaine do not dispute that they signed the disbursement sheets and accepted the money; however, they testified in their affidavit that they did not sign the disbursement sheets in the presence of witnesses. The disbursement sheets from the second suit list Michael Scurto as notary public and Judy Ellender and Laura Pertuit as witnesses. An authentic act is required to be executed before a notary public in the presence of two witnesses. La. C.C. art. 1833. An act that fails to be authentic because of the lack of competence or capacity of the notary public, or because of a defect of form, may still be valid as an act under private signature. La. C.C. art. 1834. The disbursement sheets from the first suit were not executed before a notary public.
Directing this court’s attention to deposition testimony from Charmaine and Norma, Whipple contends that the two filed a perjured affidavit regarding the absence of witnesses at the time they executed the disbursement sheets. He cites in his brief the following deposition testimony from Norma:
Q: On the document Cantrelle II [Norma’s disbursement sheet from the second suit], it shows that a Judy S. Ellender and a Laura L. Pertuit were witnesses to this transaction.
A: Right
Q: You recall that?
A: Right.
‡ ‡ ‡ ‡
Q: I see. Do you know Judy S. Ellen-der or Laura L. Pertuit?
A: You know, at the table, that’s all.
| fiWhipple also cites in his brief this deposition testimony from Charmaine:
Q: You don’t recall. On both times that you went to get money, it appears that there were two witnesses. In June of 1990, there was a Judy Ellender and a Laura Per-tuit. Do you recall those two ladies being present?
A: I know Judy. I can’t remember if the other one was there. I know Judy was there.
Q: Judy was there. And on the other time, when you went in September of ’85, Judy appears to have been there and a Melanie Burton. Question: Do you recall those ladies be *836 ing present when you got your first money?
A: I know Judy was, because—
Q: Judy was?
A: Yes
Q: Are you saying the other one was not or you don’t recall?
A: I don’t recall.
These excerpts do not wholly establish that Norma and Charmaine gave “perjured” testimony in their affidavit. Norma never clearly testified that both Ellender and Pertuit were present when she signed the disbursement sheet from the second suit. She may have been recalling that the disbursement sheet shows Ellender and Pertuit were witnesses. In addition, the mere fact Norma remembered that Ellen-der and Pertuit were at a table does not necessarily mean they were present when Norma executed her disbursement sheet. Charmaine testified that one witness was present, but that she did not remember if the other witness was present.
In support of his motion for summary judgment, Whipple introduced affidavits from Ellender, Pertuit and Michael Scurto, who notarized the disbursement sheets from the second suit. Scurto stated that “both of the parties and the witnesses signed before [him]” and “that the parties and witnesses were all |7present at the time of such signing before [him].” Scurto referred several times to an authentic act, stating, with our emphasis:
that on [June 15, 1990], he executed an authentic act in his office ... that he has had an opportunity to examine the original of said act, which authentic act was signed by Norma Cantrelle and Charmaine Cantrelle Chaisson in his presence; that the witnesses to said authentic act ....
However, two documents were executed on that date, one by Norma and one by Charmaine. Therefore, it is unclear exactly which disbursement sheet Scurto referred to in his affidavit. We note that Norma and Charmaine together executed a receipt and release of all claims against Allstate on June 11,1990.
Pertuit’s affidavit establishes that she “remembers the signing of said document,” but Pertuit did not explicitly state that she and Ellender were present when Norma and Charmaine signed. Moreover, she also refers to a single authentic act and document when two separate documents were actually executed. Ellender testified that the parties, witnesses and notary all signed the document in the presence of each other. However, like Scurto and Pertuit, she also referred to a single document. Thus, it is also unclear whether she is referring to the disbursement sheet executed by Norma or the one executed by Charmaine.
We note that the disbursement sheets do not state the actual percentages being withheld. Norma and Charmaine apparently were not participants in the negotiation of the fee, leaving this detail to Carrol, who negotiated the contract with Whipple. Norma was not present when her husband entered into the contract with Whipple. Her husband later told her the contract was for 25% and that Whipple was a good friend and would take care of it. Although Norma thought they had been overcharged soon after receiving the checks from the second suit, she did not realize anything was .wrong with the attorney fee in the first suit because she apparently did not understand percentages. Charmaine also testified |sthat she didn’t understand the percentages, and that she wasn’t aware of the terms of her contract because her father handled the negotiations.
The disbursement sheets do not obliterate the conflict in the parties’ positions on the percentage of the contingency fee, although the disbursement sheets obviously may have probative value when the trial court determines whose version of events surrounding the fee negotiation it should believe. At the very least, a genuine issue of material fact remains regarding the correct contingency fee percentage, which *837 precludes the granting of summary judgment.

Amendment of Judgment

Appellants also argue that the trial court improperly amended the November 6,1998 judgment. Because we reverse the judgment and remand, it is unnecessary for this court to consider this issue.

DECREE

At appellee’s costs, the judgment is REVERSED and the case is REMANDED to the trial court for further proceedings.