| | | |
|---|---|---|
| **WESLEY BROADEN** | * | **NO. 2021-C-0742** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **VALERO REFINING MERAUX** | * | |
| | | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

\* \* \* \* \* \* \*

APPLICATION FOR WRITS DIRECTED TO
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 21-0470, DIVISION "A"
Honorable William M. McGoey, Judge
\* \* \* \* \* \*
**Judge Rosemary Ledet**
\* \* \* \* \* \*
(Court composed of Judge Joy Cossich Lobrano, Judge Rosemary Ledet, Judge
Sandra Cabrina Jenkins)

**ON REMAND FROM THE LOUISIANA SUPREME COURT**

Raymond P. Ward
Roland M. Vandenweghe, Jr.,
Taylor E. Brett
ADAMS AND REESE LLP
701 Poydras Street, Suite 4500
New Orleans, LA 70139-4596

Jacque R. Touzet
900 Camp Street, Floor 3
New Orleans, LA 70130

      COUNSEL FOR RELATOR

Lance v. Licciardi
LICCIARDI LAW OFFICE, L.L.C.
1019 W. Judge Perez Dr.
Chalmette, LA 70043

Michael C. Ginart, Jr.
2114 Paris Rd.
Chalmette, LA 70043

David C. Jarrell
9101 W. St. Bernard Hwy.
Chalmette, LA 70043

COUNSEL FOR RESPONDENT

**WRIT GRANTED; NOVEMBER 16, 2021**
**JUDGMENT REVERSED; AND JUDGMENT**
**RENDERED**
**April 18, 2023**

This writ application is before us on remand from the Louisiana Supreme Court for reconsideration in light of its opinion in *Spencer v. Valero Ref. Meraux, L.L.C.*, 22-00469, 22-00539, 22-00730 (La. 1/27/23), 356 So.3d 936 ("*Spencer*"). For the following reasons, we grant the writ, reverse the trial court's November 16, 2021 judgment, and render judgment dismissing the case.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the same incident as in *Spencer*—an accident, fire, and explosion in the hydrocracker unit at an oil refinery in Meraux, Louisiana that occurred on April 10, 2020, at 12:46 a.m. (the "Explosion"). This case—like the three consolidated cases in *Spencer*[1]—is a negligence action for emotional distress damages without physical damages or injury against Valero Refining Meraux, LLC ("Valero"), the owner and operator of the oil refinery. The Plaintiff-Respondent—Wesley Broaden—filed a petition for damages against Valero in the justice of the

_____

[1] Although the Supreme Court in *Spencer* had before it a trio of consolidated cases, one of those cases had two plaintiffs (Brittany Spencer and her minor child, Chloe LaFrance). Thus, *Spencer* involved the claims of four plaintiffs—Brittany Spencer, Chloe LaFrance, Kevreion Raines, and Rosemary Gagliano (collectively the "*Spencer* Plaintiffs").

1

peace court.[2] The gist of his allegations were that he lived in the vicinity of the refinery, that Valero was negligent, and that he sustained mental distress.

Following a trial, the justice of the peace rendered judgment in Valero's favor. In response, Mr. Broaden filed a petition for appeal in the trial court seeking a trial *de novo* pursuant to La. C.C.P. art. 4924.[3] Thereafter, the matter proceeded to trial *de novo*. Following a trial *de novo*,[4] the trial court, in a judgment dated November 16, 2021, awarded Mr. Broaden $1,000 in damages for emotional distress without physical injury.

Seeking review of that judgment, Valero filed this writ application. In February 2022, this court denied Valero's writ, observing:

> At the time of the explosion, Mr. Broaden was at his house; it was estimated at trial that Mr. Broaden's house was located approximately one mile from the explosion. The explosion shook Mr. Broaden's house with sufficient force that he felt the reverberation inside his house. Shortly after the explosion, Mr. Broaden testified that he went outside and that he observed the fire from the explosion. He expressed concerns that the fire would get worse. Based on his proximity to the explosion, Mr. Broaden also expressed concerns about the impacts on his family's health from a possible chemical release.
>
> Given the particular facts presented here, we find there was a special likelihood of genuine and serious mental distress arising from

---

[2] Other members of Mr. Broaden's household—including one of the *Spencer* plaintiffs, Ms. Raines—also filed individual claims for damages in justice of the peace court.

[3] La. C.C.P. art. 4924(A) provides that an "[a]ppeal from a judgment rendered by a justice of the peace court or a clerk of court shall be taken to the parish court or, if there is no parish court, to the district court of the parish in which the justice of the peace court is situated." La. C.C.P. art. 4924(B) provides that "[t]he case is tried de novo on appeal. However, a trial de novo, in the district court from the justice of the peace court, is not subject to the jurisdictional limit of the justice of the peace court." La. C.C.P. art. 4924(C) provides that "[n]o further appeal from the judgment of the parish or district court is allowed." La. C.C.P. art. 2924(D) provides that "[s]upervisory jurisdiction of the proceedings in the parish or district court may be exercised by the court of appeal which otherwise would have had appellate jurisdiction."

[4] For ease of discussion, we summarize Mr. Broaden's trial testimony elsewhere in this writ opinion.

the April 10, 2020 explosion that serves as a guarantee that Mr. Broaden's claim is not spurious.

*Broaden v. Valero Ref. Meraux, LLC*, 21-0742 (La. App. 4 Cir. 2/24/22) (*unpub.*).

Valero then sought writs in the Supreme Court.

In April 2023, the Supreme Court granted Valero's writ. *Broaden v. Valero Ref. Meraux, LLC*, 22-00523 (La. 4/4/23), ___ So.3d ___, 2023 WL 2769267. In its *per curiam*, the Supreme Court instructed as follows: "[t]he case is remanded to the court of appeal for reconsideration in light of this court's opinion in [*Spencer*]." *Broaden*, 22-00523, p. 1, ___ So.3d at ___, 2023 WL 2769267,*1.

## DISCUSSION

This writ application seeks review of a trial court's judgment issued following a trial *de novo* conducted pursuant to La. C.C.P. art. 4924.[5] The applicable standard of review is the same as in civil cases in general—the manifest error or clearly wrong standard. *Spencer*, 22-00469, 22-00539, 22-00730, p. 8, 356 So.3d at 945 (citing *Hall v. Folger Coffee Co.*, 03-1734, p. 9 (La. 4/14/04), 874 So.2d 90, 98; *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989)).

In its writ to this court,[6] Valero contended that the trial court erred in awarding damages for emotional distress absent physical injury or property damage. Valero argued that Mr. Broaden failed to prove he suffered from genuine

---

[5] La. C.C.P. art. 4924(B) provides that "[t]he case is tried de novo on appeal. However, a trial de novo, in the district court from the justice of the peace court, is not subject to the jurisdictional limit of the justice of the peace court." La. C.C.P. art. 4924(C) provides that "[n]o further appeal from the judgment of the parish or district court is allowed." La. C.C.P. art. 2924(D) provides that "[s]upervisory jurisdiction of the proceedings in the parish or district court may be exercised by the court of appeal which otherwise would have had appellate jurisdiction."

[6] On remand, neither the Supreme Court nor this court ordered additional briefing. Nor did the parties provide additional briefs.

and serious mental distress. In its writ, Valero also made numerous arguments regarding what the legal standard should be for awarding emotional distress damages without physical injury. But, the Supreme Court handed down its opinion in *Spencer* after Valero filed this writ. In *Spencer*, the Supreme Court addressed those same arguments and definitely decided the appropriate legal standard. To provide a framework for reconsidering our prior writ denial in this case, we find it necessary to first summarize *Spencer*.

*Spencer* Summarized

*Spencer* involved three separate suits arising out of the Explosion. In each of those suits, the plaintiffs were granted emotional distress damages without physical damage or injury. The Supreme Court granted writs in those three cases and consolidated the three writs to decide a common issue: whether the lower courts erred in awarding the plaintiffs negligent infliction of emotional distress damages absent physical damage or injury.

At the outset, the Supreme Court rejected Valero's arguments regarding the governing legal standard and refused to reformulate its jurisprudence. *Spencer*, 22-00469, 22-00539, 22-00730, p. 9, 356 So.3d at 945. Instead, the Supreme Court adopted a fact-specific standard. In so doing, it focused on what is not required to prevail on a negligent infliction of emotional distress claim. According to the Supreme Court, the following factors are not required:

- The existence of a special, direct duty owed by the defendant;

- Outrageous conduct by the defendant;

4

- Application of the *Lejeune* standard for bystander damages codified in La. C.C. art. 2315.6, including the requirement that the plaintiff's emotional distress be "reasonably foreseeable" or "severe and debilitating";[7] and

- Evidence of medical treatment or expert medical testimony.

*Spencer*, 22-00469, 22-00539, 22-00730, pp. 16-17, 356 So.3d at 950. The fact the award may be *de minimus*, the Supreme Court observed, does not preclude recovery. *Spencer*, 22-00469, 22-00539, 22-00730, p. 17, n. 22, 356 So.3d at 950. Finally, the Supreme Court observed that "no one fact, or lack thereof, necessarily entitles a plaintiff to a recovery, nor does it preclude recovery." *Spencer*, 22-00469, 22-00539, 22-00730, p. 15, 356 So.3d at 949.

Fashioning the fact-specific standard, the Supreme Court observed that this type of claim, at its core, is a negligence claim governed by La. C.C. art. 2315(A).[8] Continuing, the Supreme Court concluded that to recover negligent infliction of emotional distress damages absent physical injury or damage, a plaintiff must prove not only the traditional duty-risk factors, but also the following additional requirements:

> [A] plaintiff additionally must prove "the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." *Moresi* [*v. State Through Dep't of Wildlife & Fisheries*,] 567 So.2d [1081,] 1096 [(La.1990)]. This rule must be "stringently applied" in cases that are inherently speculative in nature. *Bonnette* [v. Conoco, Inc., 2001-2767, p. 24 (La. 1/28/03),] 837 So.2d [1219,] 1235. . . . The plaintiff's mental disturbance must be "serious." *Moresi*, 567 So.2d at 1096. Evidence of generalized fear or evidence of mere inconvenience

---

[7] Bystander damages can be explained as follows: "[t]o certain claimants in certain circumstances Louisiana now permits recovery for mental pain and anguish suffered as a result of physical injury to a third person. See La. C.C. art. 2315.6 and *Lejeune v. Rayne Branch Hosp.,* 556 So.2d 559 (La. 1990)." *Dumas v. Angus Chem. Co.*, 31,400, pp. 6-7 (La. App. 2 Cir. 1/11/99), 728 So.2d 441, 447.

[8] La. C.C. art. 2315(A) provides that "[e]very act whatever of man that causes damages to another obliges him by whose fault it happened to repair it."

5

is insufficient. . . . [A] plaintiff bears the burden of presenting sufficient evidence of the nature and extent of the mental anguish suffered that was caused by the defendant's conduct. Whether the mental distress is "serious" is a matter of proof.

*Spencer*, 22-00469, 22-00539, 22-00730, p. 16, 356 So.3d at 950. The Supreme Court added that "given the nature of such claims, a trier of fact must be heedful of the goal of preventing spurious claims, and that not every occasion that causes some harm yields concomitant liability and compensatory damages." *Spencer*, 22-00469, 22-00539, 22-00730, p. 15, 356 So.3d at 949.

Turning to the facts, the Supreme Court observed that the *Spencer* Plaintiffs shared the following facts:

These claims arose from an explosion that caused no substantial chemical release. There was no evacuation order or shelter-in-place issued. None of the Plaintiffs experienced any physical symptoms, nor received any medical treatment. Damages are sought for general fear and anxiety resulting from the explosion. Finally, none of the Plaintiffs seek "bystander damages."

*Spencer*, 22-00469, 22-00539, 22-00730, p. 11, 356 So.3d at 946-47. Applying the fact-specific standard, the Supreme Court found that the *Spencer* Plaintiffs proved all of the requirement except for establishing "serious" mental distress. In so finding, the Supreme Court observed:

Valero owed a duty to protect those in the surrounding community. . . . Plaintiffs fall within the broad class of plaintiffs to whom a duty is owed. In this case, Valero breached the duty it owed, which was a cause-in-fact of Plaintiffs' generalized fear and anxiety. [But,] . . . the element of damages within the parameters of claims for negligent infliction of emotional distress absent physical damage/injury were not proven. Stringently applying the rule of *Moresi*, 567 So.2d at 1096, Plaintiffs failed to prove "the "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." No Plaintiff has put forth sufficient evidence that the mental disturbance suffered was "serious." *Moresi*, 567 So.2d at 1096. Viewing the record in its entirety, we find that a reasonable factual basis does not exist to support the

6

awards for negligent infliction of emotional distress; thus, we find the lower courts manifestly erred.

*Spencer*, 22-00469, 22-00539, 22-00730, pp. 17-18, 356 So.3d at 951.[9]

Summarizing, the Supreme Court acknowledged that the facts regarding each of the *Spencer* Plaintiffs were different and commented that "some approach the brink of that Plaintiff having made the requisite showing." *Spencer*, 22-00469, 22-00539, 22-00730, p. 20, 356 So.3d at 952. But, the Supreme Court found that none of the *Spencer* Plaintiffs satisfied the burden of proving that the mental disturbance that he or she suffered was "serious." *Id.*

*Mr. Broaden's Case*

At the trial *de novo* in this matter, Mr. Broaden testified that he lived in the vicinity of Valero's refinery.[10] He explained that he lived in the same residence with his mother, Robin Leflore; his aunts, Lisa Leflore and Rosalind Leflore; and his cousins. One of those cousins who lived in the residence was Ms. Raines—one of the *Spencer* Plaintiffs. Mr. Broaden explained that his Aunt Rosalind Leflore was paralyzed and confined to her bed.

---

[9] Lastly, the Supreme Court addressed the *Spencer* Plaintiffs' codal nuisance claim, observing:

> A landowner's right of ownership does "require that he tolerate some inconvenience from the lawful use of a neighbor's land." Based upon the facts of the cases before us, Plaintiffs have failed to prove that Valero "interfered substantially" with their enjoyment of their property. Proof of mere inconvenience is insufficient, and the codal doctrine of nuisance may not be used as a grounds to provide remedies for claims which would otherwise fail under the guidelines set forth herein relative to negligent infliction of emotional distress absent physical damage/injury. Additionally, in order to recover, a plaintiff asserting claims under La. Civ. Code arts. 667-669 must prove damages.... Plaintiffs have failed to meet their burden of proving damages.

*Spencer*, 22-00469, 22-00539, 22-00730, p. 20, 356 So.3d at 952.

[10] Although other witnesses were called to testify, the testimony of the other witnesses related to Valero's fault, which is not relevant here.

According to Mr. Broaden, he was going to take a shower when he heard the Explosion. He described it as a loud sound. He also felt a reverberation from the Explosion. The lights in the residence flickered off and on. After hearing and feeling the Explosion, Mr. Broaden ran outside and saw the sky lit up by a fire. He did not know whether Valero controlled the fire. Mr. Broaden testified that he stayed outside for over an hour watching the fire.

In his testimony, Mr. Broaden additionally explained that he was concerned and worried about everyone's safety. He was nervous, anxious, and scared; he did not know if the fire would get worse or if there would be another explosion. He also was worried about the release of chemicals due to the Explosion. As the oldest male in the household, Mr. Broaden was worried that he might have to help move his Aunt Rosalind Leflore. Mr. Broaden thought that he would have to save himself and his family, and he described it as being in "survival mode."

According to Mr. Broaden, he did not feel safe until daylight. He testified that he fell asleep around 10:00 or 11:00 a.m., but he did not return to a normal sleep schedule for three to four weeks. Mr. Broaden acknowledged that he did not seek medical treatment for physical or emotional injuries. He also acknowledged that the Explosion did not damage any of his personal items and that he did not notice any unusual odors that night.

Applying the *Spencer* analysis here, Mr. Broaden—similar to the *Spencer* Plaintiffs—experienced no physical symptoms, received no medical treatment, and seeks damages for general fear and anxiety resulting from the Explosion. Although

the facts here are different in some respects from those of each of the *Spencer* Plaintiffs, every fact on which a finding that Mr. Broaden would be entitled to emotional distress damages could be based is shared by one or more of the *Spencer* Plaintiffs.[11] Those facts are as follows:

---

[11] The facts regarding the four *Spencer* plaintiffs are as follows:

**Brittany Spencer and Chloe LaFrance**

Plaintiff, Brittany Spencer, and her two minor children, Chloe LaFrance and Lanny LaFrance III, were at home sleeping when the explosion occurred. Their residence was approximately 2,000 feet from the epicenter of the explosion. Ms. Spencer and Chloe were unexpectedly awakened by a loud sound of unknown origin and a significant shockwave and vibration of unknown origin. Lanny was not awakened. The sound resembled the shattering of a window and/or gun shot. The sound and/or shockwave shook Ms. Spencer's bedroom window. Ms. Spencer went outside and observed a large flame of the fire coming from the refinery, and the sky was lit up. Almost immediately after the explosion, Ms. Spencer began to hear police vehicles, fire trucks, and ambulances as part of the emergency response that lasted for several hours. Ms. Spencer went back inside, and she and Chloe went back to sleep.

On the morning of the explosion, Ms. Spencer and her children left their residence out of an abundance of caution and did not return until Monday, April 13, 2020. Ms. Spencer eventually returned to her normal sleep schedule, albeit with some trouble. She did not allow her children to play outside due to concerns for their safety. Thereafter, Ms. Spencer and her children began staying at their residence less and later moved away from the refinery in June of 2020.

As a result of the explosion, Ms. Spencer was anxious and concerned about her physical safety and that of her children as well as the potential exposure to chemicals. Ms. Spencer continued to be concerned about possible adverse health effects from exposure to chemicals for herself and her children. Chloe was scared and anxious as a result of the explosion; and, thereafter, she was anxious and concerned.

**Kevreion Raines**

When the explosion occurred, Plaintiff, Kevreion Raines, was at her home helping her aunts, Robin Leflore and Lisa Leflore, change the trach tube for her mother, Rosalind Leflore, a ventilator-dependent ALS patient. The explosion sounded "like a bomb" to her. She felt "the vibration," and the house shook. The lights began to flicker, and the alarms of Ms. Rosalind's ventilator went off. Ms. Rosalind became distressed. Ms. Raines and her aunts attempted to settle her down and finish the trach care. When Ms. Raines went outside, she saw "big gray clouds of smoke[,]" which was "very scary[.]" She did not notice any unusual odors or smoke in the house, nor in the area around the home. Ms. Raines remained at her mother's bedside until later that morning.

- Mr. Broaden's proximity to the Explosion;

- Mr. Broaden's hearing the Explosion and feeling the reverberation from it;

- Mr. Broaden's seeing the fire from the Explosion;

- Mr. Broaden's losing sleep following the Explosion;

- Mr. Broaden's worries over if something was in the air and if another explosion might occur; and

- Mr. Broaden's fear for his health and safety and for that of his family.

None of these facts, alone or taken together, was found to be sufficient to meet the *Spencer* Plaintiffs' burden of proving "serious" mental distress.[12] Mr. Broaden's circumstances cannot be distinguished from the *Spencer* Plaintiffs' circumstances. Indeed, he was in the same house as one of the *Spencer* Plaintiffs, Ms. Raines.

---

At first, Ms. Raines had trouble sleeping, but she returned to her normal sleep schedule a couple of days after the explosion. Ms. Raines continued to feel uncomfortable living in the house out of fear it may happen again. She was of the belief that the explosion caused cracks in the ceiling and "little small cracks within the floors" of the home. At the time of trial, Ms. Raines felt fear in the back of her mind and remained uncertain about what was in the air and if it was safe.

***Rosemary Gagliano***

At the time of the explosion, Plaintiff, Rosemary Gagliano, was staying at her mother's home. She heard a loud "boom" that shook everything in the home. The noise woke her up and scared her. She witnessed a "glow," and the explosion "lit up the house through the blinds[.]" Ms. Gagliano was "shaky and very scared." She went outside and saw the flames. She and her mother left the home and began driving away from the refinery; however, the roadway was blocked. Therefore, Ms. Gagliano drove in the opposite direction and went to her sister's home nearby. Ms. Gagliano and family members sat outside until early morning "nervous" and "shaking[.]" Eventually, she went inside and dozed. She returned home the evening of April 10, 2020. Ms. Gagliano remained nervous that an explosion was going to happen again. The explosion did not affect her daily lifestyle, she was "just leery about it[.]"

*Spencer*, 22-00469, 22-00539, 22-00730, pp. 2-7, 356 So.3d at 941-44.

[12] In so finding, we note the lack of a definition of the term "serious" in *Spencer*. *See Spencer*, 22-00469, 22-00539, 22-00730, 356 So.3d at 958 (Crain, J., concurring) (observing that "[t]he problem with the majority's approach is that "serious" is not defined; rather, it is left to be defined in an ad hoc manner").

Summarizing, Mr. Broaden—like the *Spencer* Plaintiffs—failed to meet his burden of proving "serious" mental distress. Accordingly, the Supreme Court's holding in *Spencer* is dispositive and dictates that we reverse the trial court's award of damages to Mr. Broaden.

## DECREE

For the foregoing reasons, we grant Valero's writ application, reverse the trial court's November 16, 2021 judgment awarding damages to Mr. Broaden, and render judgment dismissing this case.

**WRIT GRANTED; NOVEMBER 16, 2021 JUDGMENT REVERSED; AND JUDGMENT RENDERED**